**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BARROW SHAVER RESOURCES COMPANY, LLC, | § | Case No. 24-33353 |
| | § | (Jointly Administered) |
| Debtor.[1] | § | |

**DISCLOSURE STATEMENT FOR THE CREDITORS' LIQUIDATING PLAN OF BARROW SHAVER RESOURCES COMPANY, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

[1] The last four digits of the Debtor's federal tax identification number are 0510. The Debtor's corporate headquarters is located at 977 Pruitt Place, Tyler, Texas 75703. All pleadings and additional information related to the administration of the Chapter 11 Case are accessible free of charge at https://cases.ra.kroll.com/BSR/.

**PORTER HEDGES LLP**
M. Shane Johnson
Michael Dearman
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
sjohnson@porterhedges.com
michael.dearman@porterhedges.com

**COUNSEL FOR MIDDLETON OIL COMPANY**

**DORÉ ROTHBERG LAW, P.C.**
Lisa Rothberg
Connor Smith
16225 Park Ten Place Dr., Suite 700
Houston, Texas 77084
Telephone: (281) 829-1555
Facsimile: (281) 200-0751
lrothberg@dorelaw.com

**COUNSEL FOR AXIS ENERGY SERVICES, LLC, DOC ENERGY SERVICES, INC., CUDD PRESSURE CONTROL, INC., THRU TUBING SOLUTIONS, INC. GENESIS FLUIDS, LLC, FORCE PRESSURE CONTROL, LLC, AND RELIANCE WELL SERVICE, INC.**

**MEHAFFYWEBER**
Holly Hamm
P.O. Box 16
Beaumont, Texas 77704
Telephone: (409) 835-5011
Facsimile: (409) 835-5177
HollyHamm@mehaffyweber.com

**COUNSEL FOR CACTUS WELLHEAD, LLC AND PRINCESS THREE OPERATING, LLC**

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland
Julie Goodrich Harrison
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-3769
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

**COUNSEL FOR PATTERSON-UTI DRILLING COMPANY LLC, MS DIRECTIONAL, LLC, AND ULTERRA DRILLING TECHNOLOGIES, LP**

**PORTER HEDGES LLP**
Eric M. English
James A. Keefe
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
eenglish@porterhedges.com
jkeefe@porterhedges.com

**COUNSEL FOR THE AD HOC GROUP**

Dated: September 10, 2026

**THIS SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN SUFFICIENT ACCEPTANCE OF THE PLAN (AS DEFINED HEREIN) UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). FOLLOWING THE SOLICITATION OF VOTES, THE PLAN PROPONENTS EXPECT TO PROMPTLY SEEK AN ORDER CONFIRMING THE PLAN.**

| |
|---|
| **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS OCTOBER 26, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), UNLESS EXTENDED BY THE PLAN PROPONENTS OR AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS OR INTERESTS MAY VOTE ON THE PLAN IS [SEPTEMBER 24], 2026 (THE "VOTING RECORD DATE").** |

**HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE VOTING ON THE PLAN.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.**

**IN PREPARING THIS DISCLOSURE STATEMENT, THE PLAN PROPONENTS RELIED ON INFORMATION FILED ON THE DOCKET IN THE CHAPTER 11 CASE OR OTHERWISE PROVIDED BY THE DEBTOR OR TEXOIL. THE PLAN PROPONENTS HAVE NOT INDEPENDENTLY VERIFIED ALL HISTORICAL OR FINANCIAL INFORMATION AND DO NOT HAVE ACCESS TO ALL SUCH INFORMATION. WHILE THE PLAN PROPONENTS BELIEVE THAT THE INFORMATION FAIRLY REFLECTS THE INFORMATION AVAILABLE AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE INFORMATION OR ASSUMPTIONS CONTAINED HEREIN. THE PLAN PROPONENTS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.**

**ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. OVERVIEW OF THE DEBTOR'S OPERATIONS ..... 3

- **A. The Debtor's Corporate History, Structure, and Business Overview ..... 3**
- **B. The Debtor's Capital Structure ..... 4**
- **C. Events Leading to Chapter 11 Filing ..... 4**

III. MATERIAL Developments and Events of THE CHAPTER 11 CASE ..... 5

- **A. Commencement of Chapter 11 Case and First Day Motions ..... 5**
  - 1. First-Day Relief ..... 5
  - 2. Appointment of the Committee ..... 6
  - 3. Postpetition Sales ..... 6

IV. SUMMARY OF THE PLAN ..... 7

- **A. Acceptance Requirements ..... 9**
  - 1. Acceptance or Rejection of the Plan ..... 9
    - (a) Deemed Acceptance of the Plan ..... 9
    - (b) Voting Classes ..... 9
    - (c) Deemed Rejection of the Plan ..... 9
    - (d) Deemed Acceptance by Non-Voting Classes ..... 9
    - (e) Elimination of Vacant Classes ..... 9
  - 2. Confirmation of Plan Pursuant to Section 1129(b) of the Bankruptcy Code ..... 10
  - 3. Controversy Concerning Impairment ..... 10
- **B. Means for Implementation of the Plan ..... 10**
  - 1. Transactions Effective as of the Effective Date ..... 10
  - 2. Cancellation of Securities and Agreements ..... 10
  - 3. Settlement with Remaining Working Interest Owners ..... 10
  - 4. Liquidating Trust Waterfalls ..... 12
  - 5. Liquidating Trust ..... 12
  - 6. Claims Resolution ..... 13
  - 7. Distributions ..... 13
  - 8. Authority to Pursue, Settle, or Abandon Retained Causes of Action ..... 13
  - 9. Additional Trust and Wind-Down Provisions ..... 13
  - 10. Retail Drilling Partnerships ..... 13
  - 11. Substantial Contribution Claim ..... 14
  - 12. Kasino/Turner Amounts ..... 15
  - 13. Conditions Precedent ..... 15
- **C. Settlement, Release, Injunction and Related Provisions ..... 15**
  - 1. Compromise and Settlement of Claims, Interests, and Controversies ..... 15
  - 2. Exculpation ..... 15
  - 3. Injunction ..... 16

4. Term of Injunctions or Stays ... 16
5. Tax Consequences of the Plan ... 16

V. CERTAIN RISK FACTORS TO BE CONSIDERED ... 17

**A. Certain Bankruptcy Law Considerations ... 17**

1. Risk of Non-Confirmation of the Plan ... 17
2. Risk of Non-Occurrence of the Effective Date ... 17
3. Conversion to Chapter 7 Case ... 17
4. Parties in Interest May Object to the Plan's Classification of Claims and Interests ... 17
5. Parties May Object to the Plan ... 18

**B. Additional Factors Affecting Recoveries ... 18**

1. Claims Could Be More Than Projected ... 18
2. Recoveries and Timing Are Uncertain ... 18
3. Liquidating Trust Administration ... 18

**C. Risks of Litigation ... 18**
**D. Additional Factors ... 18**

1. Plan Proponents Could Withdraw Plan ... 18
2. Plan Proponents Have No Duty to Update ... 19
3. No Representations Outside This Disclosure Statement Are Authorized ... 19
4. No Legal or Tax Advice is Provided by This Disclosure Statement ... 19
5. No Admission Made ... 19
6. Certain Tax Consequences ... 19

VI. Confirmation of the Plan ... 19

**A. Confirmation Hearing ... 19**
**B. Requirements for Confirmation of the Plan ... 19**

1. Requirements of Section 1129(a) of the Bankruptcy Code ... 19

(a) General Requirements ... 19
(b) Best Interests Test ... 21
(c) Feasibility ... 21

2. Additional Requirements for Non-Consensual Confirmation ... 21

(a) Unfair Discrimination Test ... 21
(b) Fair and Equitable Test ... 22

VII. Alternatives to Confirmation and Consummation of the Plan ... 22

**A. Alternative Plan ... 22**
**B. Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law ... 22**

VIII. Conclusion and Recommendation ... 22

# EXHIBITS

**EXHIBIT A** CREDITORS' LIQUIDATING PLAN OF BARROW SHAVER RESOURCES COMPANY, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**EXHIBIT B** SOLICITATION AND VOTING PROCEDURES

**EXHIBIT C** LIEN PROCEDURES

**EXHIBIT D** LIQUIDATION ANALYSIS

# I. INTRODUCTION

The Plan Proponents submit this Disclosure Statement in connection with solicitation of votes on the *Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC Under Chapter 11 of the Bankruptcy Code*, dated September 10, 2026 (as may be modified, supplemented or amended from time to time, the "Plan," attached hereto as **Exhibit A**). A copy of the solicitation and voting procedures is attached hereto as **Exhibit B** and the lien procedures related to the Statutory Lien Claims is attached hereto as **Exhibit C**. Capitalized terms used in this Disclosure Statement, but not otherwise defined herein, have the meanings ascribed to such terms in the Plan. To the extent of any inconsistencies between this Disclosure Statement and the Plan, the Plan governs.

The Plan is proposed by Middleton Oil Company, Patterson-UTI Drilling Company LLC, MS Directional, LLC, Ulterra Drilling Technologies, LP, Cactus Wellhead, LLC, Princess Three Operating, LLC, Axis Energy Services, LLC, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc., Genesis Fluids, LLC, Force Pressure Control, LLC, Reliance Well Service, Inc., and the Ad Hoc Group (collectively, the "Plan Proponents"). The Ad Hoc Group consists of Mark Atchity, Kirsten Eriksson, Sterling Louviere, Aaron Pollack, Shaun Eck, and Lawrence Steinberg, Jr.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct assets sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

On the Effective Date, the Debtor's assets will be transferred to the Liquidating Trust, subject to the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee will be responsible for liquidating and distributing the Liquidating Trust Assets, prosecuting and liquidating Retained Causes of Action, resolving Claims, and winding down the Debtor's affairs in accordance with the Plan.

The Plan Proponents believe that the Plan will provide Holders of Claims with a recovery at least as great as the recovery available in a chapter 7 liquidation, while avoiding the delay and additional administrative expense that could accompany the appointment of a chapter 7 trustee. Actual recoveries and timing will depend on asset proceeds, the resolution of Claims and Causes of Action, expenses of the Liquidating Trust, and other circumstances described in this Disclosure Statement.

**THE PLAN PROPONENTS SUPPORT CONFIRMATION OF THE PLAN AND URGE ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN. THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE MOST VALUE THAT CAN BE REALIZED FOR CREDITORS UNDER THE CIRCUMSTANCES, SUBJECT TO THE RISKS AND UNCERTAINTIES DESCRIBED HEREIN.**

Under the Bankruptcy Code, only Holders of Claims in certain "impaired" Classes are entitled to vote on the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under the Plan unless (a) the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (b) notwithstanding any legal right to an accelerated payment of such claim or interest, the Plan, among other things, cures all existing (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

Classes 3 (Statutory Lien Claims) and 4 (General Unsecured Claims) are Impaired under the Plan and are entitled to vote to accept or reject the Plan. Classes 1 (Other Priority Claims) and 2 (Other Secured Claims) are Unimpaired and are not entitled to vote. Class 5 (Interests) is Impaired and is deemed to reject the Plan.

**PLEASE TAKE NOTE OF THE FOLLOWING KEY DATES AND DEADLINES RELATED TO THE PLAN:**

| Event | Date | Description |
|---|---|---|
| Voting Record Date | **September 24, 2026** | Date for determining (i) which Holders of Claims in the Voting Classes, as defined herein, are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim (the "***Voting Record Date***") |
| Solicitation Deadline | Within four (4) Business Days after entry of the Order conditionally approving the Disclosure Statement (or as soon as reasonably practicable thereafter). | Date for distributing Solicitation Packages, including the Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "***Solicitation Deadline***") |
| Deadline to File Plan Supplement | **October 19, 2026** | Date by which the Plan Proponents shall file the Plan Supplement |
| Voting Deadline | **October 26, 2026 at 4:00 p.m. (prevailing Central Time)** | Deadline by which all Ballots must be properly executed, completed, and delivered so that they are actually received (the "***Voting Deadline***") by Kroll Restructuring Administration LLC, the notice, claims, and solicitation agent retained by the Debtor in this Chapter 11 Case ("***Kroll***" or the "***Solicitation Agent***") |
| Plan and Disclosure Statement Objection Deadline | **October 26, 2026 at 4:00 p.m. (prevailing Central Time)** | Deadline by which objections to the Plan and/or adequacy of the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "***Plan and Disclosure Statement Objection Deadline***") |

| Event | Date | Description |
|---|---|---|
| Deadline to File Voting Report | **October 28, 2026** | Date by which the report tabulating the voting on the Plan (the "***Voting Report***") shall be filed with the Court |
| Requested Combined Hearing Date | **November 2, 2026, [●]:[●] a.m./p.m. (prevailing Central Time)** (Subject to the Court's availability) | Date and time for the hearing at which the Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "***Combined Hearing Date***") |

## II. OVERVIEW OF THE DEBTOR'S OPERATIONS

**The historical background information set forth in this Article II is based on the *Declaration of James A. Katchadurian in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 63] and other filed pleadings in the Chapter 11 Case. The Plan Proponents and their professionals have not independently verified this information, and the information is not intended to constitute and may not be construed as an admission.**

### A. The Debtor's Corporate History, Structure, and Business Overview

The Debtor was formed in mid-1989 by Scott O. Shaver and Thomas D. Barrow as an independent oil and natural gas company focused on the exploration, development, production, and acquisition of crude oil and natural gas from properties in Southeast Texas, East Texas, and West Texas. The Debtor's headquarters is located in Tyler, Texas. The Debtor is owned 50% by SOS-LMC, LLC, which is wholly owned by Scott O. Shaver, and 50% by TLB Corp., which is wholly owned by the estate of Thomas D. Barrow and controlled by Linda Barrow. The Debtor's organizational chart, including non-Debtor entities, is included below:



The Debtor owns 100% of BSR Lone Star GP, LLC, the managing general partner of BSR Lone Star Opportunity Zone Fund LP and BSR Lone Star Drilling Fund I LP (collectively, the "Retail Drilling Partnerships"). The Retail Drilling Partnerships invest in drilling, completion, and equipping oil and gas wells and, after funding their proportionate costs, were to receive assignments of undivided wellbore interests. Additionally, the Retail Drilling Partnerships participated in a drilling program consisting of the acquisition, drilling, and development of oil and gas prospects under a drilling program agreement with the Debtor. The drilling program agreement provides that BSR Lone Star GP, LLC, in its capacity as manager of the drilling program, will have the exclusive power and authority to act on behalf of the partnership with respect to the management and administration of the business and affairs of the drilling program and the oil and gas properties subject to the drilling program agreement. The Retail Drilling Partnership were to be co-owners of undivided interests in the oil and gas properties subject to the drilling program agreement, provided that the Retail Drilling Partnership were to own undivided interests in the wellbores only. The Retail Drilling Partnerships pay their advance direct cost under the drilling program. Following the drilling, completion and equipping of each development wells co-funded by the Retail Drilling Partnership and other working interest owners, the Retail Drilling Partnerships were to receive wellbore assignments equal to its proportionate funded share of drilling and completion costs, facilities costs, and other authority for expenditure and leasehold related costs relating to such development well.

In 1994, the Debtor made two significant discoveries that began the assembly of leases comprising one of the largest oil fields found in the East Texas Basin. The Debtor initially controlled approximately 60,000 acres and currently controls approximately 30,000 acres, with exploration and acquisition focused principally on the East Texas Basin and Midland Basin. Its operations have included Morris, Freestone, Henderson, Leon, Madison, Cass, Nacogdoches, Rusk, Smith, Tom Green, Reagan, Panola, Upshur, and Camp Counties, Texas.

The Debtor's main operations focus on a largely contiguous block of approximately 150 leaseholds comprising approximately 37,616.40326 gross acres in East Texas as of the Voluntary Petition Date (the "East Texas Operations" or "Hidden Rock Field"). From the East Texas Operations, the Debtor produces approximately 2,200 barrels of oil per day.

As of the Voluntary Petition Date, the Debtor's administrative and operational activities relied on a workforce of seven (7) full-time employees, seven (7) contract employees performing office and administrative functions, and fourteen (14) field contractors serving as supervisors and pumpers.

### B. The Debtor's Capital Structure

As of the Petition Date, the Debtor owed approximately $67 million in trade debt to vendors and service providers that supplied materials, component parts, products, tooling, and services used in support of the Debtor's business. The Plan addresses these obligations principally through the treatment of Statutory Lien Claims and General Unsecured Claims.

Many of the Debtor's trade creditors exercised rights to file mechanics and mineral liens against the Debtor's assets. Based on the First Day Declaration, as of the Voluntary Petition Date the Debtor had received approximately $40 million in lien perfection notices. The purported liens and related claims are addressed under Class 3 (Statutory Lien Claims) of the Plan.

### C. Events Leading to Chapter 11 Filing

On December 1, 2017, the Debtor and other parties entered into a joint operating agreement for oil and gas leases in Morris, Cass, Camp, Upshur, and Marion Counties. The Debtor was listed as owning a 50% working interest, but, with one exception, the working-interest owners had not recorded their

assignments before the Involuntary Petition Date. On December 1, 2023, the exhibit to the joint operating agreement was amended to reflect Barrow Shaver Production LLC ("BSP") as owning a 44% working interest, although the Debtor did not execute an assignment to BSP and BSP did not pay consideration for that interest. The Debtor believed it owned the 44% working interest.

Between 2023 and 2024, the Debtor conducted an aggressive drilling program in the East Texas Basin. The program produced capital expenditures that far exceeded corresponding production gains, leaving the Debtor unable to pay its proportionate share of operating costs and contributing to the reported trade-debt balance.

The Debtor was involved in district court litigation affecting multiple BSR wells in the Hidden Rock Field. Many of the lawsuits were initiated by ETX Minerals, LLC and NETX Acquisitions, LLC and alleged that the Debtor had not timely commenced operations under applicable leases. In these cases, the Debtor successfully defeated requests for temporary restraining orders and temporary injunctions and obtained favorable rulings regarding the enforceability of the regulation and delay clause.

Given its significant debt service and deepening liquidity constraints, the Debtor explored potential out-of-court restructuring transactions. The Debtor identified a potential purchaser of working interests, but fell behind on trade obligations needed for operations while the potential purchaser conducted due diligence.

On July 23, 2024, Axis Energy Services, LLC, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc., Genesis Fluids, LLC, and Force Pressure Control, LLC filed an involuntary chapter 7 petition based on outstanding trade claims totaling $8,454,981.01. On August 19, 2024, the Debtor consented to an order for relief under chapter 11 by filing its voluntary petition. During the period between the two filings, the Debtor operated in the ordinary course under section 303(f) of the Bankruptcy Code.

The Debtor believed that consenting to chapter 11 would maximize value for the Estate and stakeholders, support a sale of its assets, and facilitate confirmation of a plan that could provide distributions depending on the claims pool and other factors.

## III. MATERIAL DEVELOPMENTS AND EVENTS OF THE CHAPTER 11 CASE

The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 19, 2024 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). The involuntary petition was filed on July 23, 2024. Set forth below is a summary of certain material events since the Petition Date.

### A. Commencement of Chapter 11 Case and First Day Motions

In connection with the Voluntary Petition, the Debtor filed first-day pleadings seeking relief intended to stabilize its business, preserve the value of its oil and gas assets, protect its workforce and counterparties, and facilitate the orderly administration of the Chapter 11 Case.

#### 1. *First-Day Relief*

The requested first-day relief was designed to maintain business continuity and preserve estate value during the transition into chapter 11. The Debtor explained that uninterrupted workforce, insurance, cash-management, mineral-interest, utility, tax, and fee arrangements were important to continuing operations and protecting production and revenue. The Debtor sought and obtained the following relief:

- Authority to maintain the existing Workforce and pay wages, salaries, other compensation, and reimbursable expenses in the ordinary course [Docket Nos. 56 and 85];

- Authority to continue insurance, cash management, mineral-interest payments, utility services, and applicable taxes and fees [Docket Nos. 58 and 160];

- Authority for related administrative relief, including retention of Kroll Restructuring Administration LLC as claims, noticing, and solicitation agent and extensions for schedules and Rule 2015.3 reports [Docket Nos. 53 and 71]; and

- Authority to pay mineral interest holders in the ordinary course of business [Docket No. 61 and 237].

**2. *Appointment of the Committee***

On August 30, 2024, the United States Trustee for Region 7 (Southern and Western Districts of Texas) appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 124]. The Committee consists of Top Line Rental, LLC, Rory Richardson, and 5J Oilfield Solutions, LLC.

**3. *Postpetition Sales***

After the Petition Date, the Debtor pursued a sale process designed to maximize value for the Estate. Beginning in January 2025, the Debtor, with the assistance of its investment banker, Chaffe & Associates, Inc., conducted broad outreach to exploration and production companies, private equity firms, financial sponsors, and other industry-focused investors. On June 27, 2025, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 760], authorizing a marketing and sale process, a potential auction, and procedures for bidding on three lots.

The Lot 1 Assets consisted principally of the Debtor's oil and gas leases, leasehold interests, working interests, mineral interests, royalty interests, related appurtenant interests, the incomplete Hidden Rock Pipeline, and certain claims relating to unpaid joint interest billings in Camp, Cass, Marion, Morris, and Upshur Counties, Texas. The Lot 2 Assets consisted principally of the Debtor's claims, causes of action, and rights of recovery relating to the remaining oil and gas interests, including potential avoidance actions; certain oil and gas interests not included in the Lot 1 Assets or Lot 3 Assets; and claims and rights of recovery relating to certain insider and non-insider overriding royalty interests. The Lot 3 Assets consisted of the Debtor's other oil and gas interests in East and West Texas outside the Hidden Rock Field, including its legacy assets.

The Debtor designated TexOil Investments, LLC as the Lead Bidder, and TexOil's asset purchase agreements (the "TexOil Asset Purchase Agreements") formed the basis for the auction held on November 10, 2025 (the "Auction"). The Debtor conducted the Auction in Houston pursuant to the Bidding Procedures. The Auction included three Qualified Bidders—TexOil Investments, LLC, NETX Energy, LLC, and PWI Group, LLC. At the conclusion of the Auction, TexOil Investments, LLC was selected as the Winning Bidder, and NETX Energy, LLC was selected as the Backup Bidder.

On November 12, 2025, the Debtor filed the Sale Motion [Docket No. 917]. On November 19, 2025, the Bankruptcy Court entered the Sale Order [Docket No. 972], approving the Sale of substantially all of the Debtor's Assets to TexOil free and clear of claims, liens, interests, and encumbrances (except as described below with respect to the Statutory Lien Claims) and approving the assumption and assignment

of certain designated executory contracts and unexpired leases under the TexOil Asset Purchase Agreements. The Notice of Sale Closing [Docket No. 1177] states that the Sale closed on May 1, 2026.

The Winning Bid provided for a total purported purchase price of $60,000,010, plus the assumption of material plugging and abandonment liabilities. The purchase price was allocated as follows: $27,520,000 to the Lot 1 Assets, $32,480,000 to the Lot 2 Assets, and $10 to the Lot 3 Assets. However, the total consideration paid to the Debtor was substantially less. Per the Debtor's most recent Monthly Operating Report [Docket No. 1364], as of July 31, 2026 the Debtor was holding $5,798,631 in Operating Cash, $1,130,180 related to the Kasino/Turner litigation, and $36,427,831 related to the sale of the Lot 1 and Lot 2 Assets.

Holders of Statutory Lien Claims arising under Chapter 56 of the Texas Property Code remain secured following entry of the Sale Order even though the Sale Order approved the transfer of the Assets to Texoil free and clear of claims, liens, interests, and encumbrances. The Sale Order specifically provides, "all Liens shall attach to the proceeds of the Assets in the same priority, validity, extent, force, and effect as existed prior to the Sale Transaction… [and] the Mineral Liens shall attach to all proceeds of the Sale Transaction (including cash proceeds) to the same extent and with the same validity, priority, force, and effect that they have as against the Assets". [Docket No. 972 ¶¶ 17 and 22]. Notably, the Sale Order preserves the Statutory Lien Claims and any defenses thereto, of any lienholder that may be asserted against any third-party that is not sold as a part of the Lot 1, Lot 2, or Lot 3 sales. Additionally, in the *Order Granting Debtor's Emergency Motion to Approve Compromise and Settlement by and Among Debtor, TexOil Investments, LLC, TexOil ET, LLC, and Settling Purported Working Interest Owners Pursuant to Fed. R. Bankr. P. 9019(a)* [Docket No. 1200], the Court ordered "[f]or the avoidance of doubt, any valid, perfected, and non-avoidable liens, claims, interests, and encumbrances attach to the proceeds of the sale transactions—including the Guaranteed Minimum Payment[2] subject to all reservations of rights, limitations, and carve-outs stated in the Sale Order." [Docket No. 1200].

Accordingly, the Chapter 56 Statutory Lien Claims that encumbered the Lot 1 and Lot 2 assets as of the closing now encumber the corresponding sale proceeds of those assets, including the $36,427,831 the Debtor reported holding as of July 31, 2026. Holders of allowed Statutory Lien Claims have a priority position to distribution from the Lot 1 and Lot 2 sale proceeds ahead of General Unsecured Claims as provided under the claims resolution and distribution provisions in the Plan.

## IV. SUMMARY OF THE PLAN

This section of the Disclosure Statement summarizes the Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC, a copy of which is attached hereto as **Exhibit A**. This summary is qualified in its entirety by reference to the Plan. The Plan Supplement, including the Liquidating Trust Agreement and the Schedule of Retained Causes of Action, will be Filed by **October 19, 2026**.

The following table summarizes (a) the treatment of Claims and Interests under the Plan, (b) which Classes are Impaired by the Plan, (c) which Classes are entitled to vote on the Plan, and (d) the estimated recoveries for Holders of Claims and Interests. The table is qualified in its entirety by reference to the full text of the Plan. Estimated recovery percentages are shown as placeholders where the Plan does not provide sufficient case-specific information.

[2] Capitalized terms not defined herein or in the Plan from quoted Court docket entries shall have the definition provided in the docket entry.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote? | Approx. % Recovery on Allowed Claims or Interests |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive in full and complete settlement, release, and discharge of such Claim (i) payment in full in Cash on account of the unpaid portion of such Claim first from the Debtor's Operating Cash, next from Sale Proceeds in excess of $35 million, and then from the GUC Assets pursuant to the Liquidating Trust Waterfalls, on the later of (a) the Effective Date (or as soon thereafter as reasonably practicable) and (b) as soon as reasonably practicable after the date such Claim becomes due and payable; (ii) such other less favorable treatment as to which the Debtor or the Liquidating Trustee and the Holder of such Claim have agreed; or (iii) such other treatment rendering such Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired | No (Deemed to Accept) | 100% |
| 2 | Other Secured Claims | On or as soon as practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive at the Liquidating Trustee's election, except to the extent that any Holder agrees to less favorable treatment, either: (i) Cash equal to the amount of such Allowed Other Secured Claim; (ii) the property that serves as security for such Allowed Other Secured Claim; or (iii) such other treatment that shall render such Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. Any Deficiency Claim of a Holder of an Other Secured Claim shall be treated as a General Unsecured Claim in Class 4. | Unimpaired | No (Deemed to Accept) | 100% |
| 3 | Statutory Lien Claims | Each Holder of an Allowed Statutory Lien Claim shall receive its Pro Rata share of the Lienholder Assets pursuant to the Liquidating Trust Waterfalls. Each Allowed Statutory Lien Claim shall be paid on a Pro Rata basis as if the Statutory Lien Claimant held a valid lien on the entirety of the Debtor's Lot 1 and Lot 2 Assets. Causes of Action for potential preference claims against Allowed Statutory Lien Claimants | Impaired | Yes | [INSERT APPROX. % RECOVERY] |

| | | | | | |
|---|---|---|---|---|---|
| | | under chapter 5 of the Bankruptcy Code shall be released and waived. | | | |
| 4 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Assets pursuant to the Liquidating Trust Waterfalls. | Impaired | Yes | [INSERT APPROX. % RECOVERY] |
| 5 | Interests | Interests shall be cancelled and discharged, with the Holders of such Interests receiving no Distribution on account of such Interests. | Impaired | No (Deemed to Reject) | 0% |

## A. Acceptance Requirements

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

### 1. *Acceptance or Rejection of the Plan*

(a) Deemed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan. Therefore, Classes 1 and 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote.

(b) Voting Classes

Classes 3 and 4 are Impaired under the Plan and are entitled to vote to accept or reject the Plan. Holders eligible as of the Voting Record Date will receive the applicable Ballot. To vote, a Holder must complete and return its Ballot so that it is actually received by the claims, noticing, and solicitation agent no later than the Voting Deadline, at the address or by the method specified in the solicitation procedures. Voting eligibility and the procedures for disputed, contingent, unliquidated, amended, transferred, or duplicate Claims, including any request for temporary allowance, will be governed by the Disclosure Statement Order and the solicitation and voting procedures.

(c) Deemed Rejection of the Plan

Class 5 is Impaired under the Plan and is not entitled to receive or retain any property on account of the Interests in Class 5. Therefore, Class 5 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

(d) Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

(e) Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the Confirmation Date shall be deemed eliminated from the Plan for purposes

of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

#### 2. *Confirmation of Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponents reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

#### 3. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

### B. Means for Implementation of the Plan

#### 1. *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor, its board of directors, its members, or any other Entity.

#### 2. *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan, (1) the obligations of the Debtor under any membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, or warrants shall be cancelled solely as to the Debtor, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any governing documents for such interests or instruments shall be released and discharged. As soon as reasonably practicable after the Effective Date, the Liquidating Trustee will enter into such transactions as may be necessary or appropriate on the Debtor's behalf to merge, dissolve, or otherwise terminate the corporate existence of the Debtor, subject to the Liquidating Trust Agreement.

#### 3. *Settlement with Remaining Working Interest Owners*

The Plan deems all working interests owned by the Remaining Working Interest Owners valid and unavoidable as of the Effective Date of the Plan. The Debtor shall provide a release to the Remaining Working Interest Owners, record their assignments in the real property records, and not pursue litigation against them to avoid or otherwise impair their working interests. In exchange, $5 million in the Avoidance Litigation Account, plus accrued interest, shall constitute Operating Cash used first to pay Administrative Expense Claims, and $5 million of Operating Cash shall constitute Operating Cash for purposes of the Liquidating Waterfalls used first to pay Administrative Expense Claims and $5 million of Operating Cash shall be contributed to the Liquidating Trust for the benefit of Class 3 Statutory Lien Claimants.

Statutory Lien Claimants will maintain any valid lien claims that have or may be asserted against the working interests owned by the Remaining Working Interest Owners, after reducing their claims by amounts paid under the Plan, with the same rights as existed immediately before the Effective Date. The Remaining Working Interest Owners will maintain their claims and defenses against the Statutory Lien Claimants. Amounts above the $16.24 million Purchase Price Floor currently held in escrow relating to those Remaining Working Interest Owners' working interests will be returned to TexOil.

Approval of the settlement with the Remaining Working Interest Owners is appropriate under the standard set for in Bankruptcy Rule 9019, which provides in relevant part that "[o]n … motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The approval of a settlement is within the "sound discretion" of the Court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297–98 (5th Cir. 1984); *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980). Pursuant to Bankruptcy Rule 9019(a), the Court may approve a settlement if it is fair, reasonable, and in the best interests of the estate. *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). A settlement should be approved unless it falls below the lowest point in the range of reasonableness. *See, e.g., In re Jackson Brewing Co.*, 624 F.2d at 602; *Cook v. Waldron*, 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (quotation omitted). Generally, the role of the Bankruptcy Court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59–60 (S.D. Tex. 1993). Instead, the Court should determine whether the settlement as a whole is fair and equitable. *See, e.g., Age Refin. Inc.*, 801 F.3d at 540; *Protective Comm. for Indep. S'holder of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Settlements are considered a "normal part of the process of reorganization" and an "oftentimes desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d at 602.

In evaluating a proposed settlement, courts in the Fifth Circuit consider (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on the wisdom of the compromise. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997). The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

As an initial matter, TexOil has taken the position that the Debtor still owns the claims and causes of action against the Remaining Working Interest Owners. *See TexOil Investments, LLC and TexOil ET, LLC's Amended Motion to Dismiss Amended Complaint* [Adv. Proc. No. 26-3146, Docket No. 13], ¶ 11 ("a complete reading of the Lot 2 APA in its entirety clearly demonstrates that the Potential WIO Avoidance Actions were not transferred to TexOil pursuant to the Lot 2 APA.").[3] Thus, TexOil cannot dispute the Debtor's position that it still owns the Potential WIO Avoidance Actions.[4]

The *Cajun Electric* and *Foster Mortgage* factors all support approving the settlement. Based on the Bankruptcy Court's *Memorandum Opinion Granting in Part and Denying in Part Motions for Summary Judgment* [Adv. Proc. No. 25-3440, Docket No. 121] (the "Kasino Decision"), the Plan Proponents believe that the Bankruptcy Court may ultimately conclude that the Debtor may not avoid the working interests held by the Remaining Working Interest Owners under section 544 of the Bankruptcy Code. More to the point, the settlement is a good deal for the Debtor's Estate because under the Lot 2 APA delivering clear title to the Remaining Working Interest Owners results in releasing funds to the Debtor from the Third Party

---

[3] The "Potential WIO Avoidance Actions" includes the claims and causes of action against the Remaining Working Interest Owners except for the Retail Drilling Partnerships because claims and causes of action against the Retail Drilling Partnerships are not addressed in the Lot 2 APA.

[4] Middleton Oil reserves all rights with respect to the ownership of the Potential WIO Avoidance Actions.

Claimed Interest Escrow Account. *See* Lot 2 APA, § 3.3(c). Based on information from TexOil, only approximately $1 million remains in the Third Party Claimed Interest Escrow Account, thus at most the Estate would receive just over $1 million from the escrow in the unlikely event it wins the litigation. But even that potential recovery (to the extent funds still remain in the Third Party Claimed Interest Escrow Account at the time the litigation concludes) would be more than offset by the potential lengthy litigation and litigation costs. The other relevant factor is the reasonable view of creditors, and here the Statutory Lien Claimant Plan Proponents support the settlement.[5]

### 4. *Liquidating Trust Waterfalls*

The Plan establishes separate waterfalls for the Lienholder Assets and the GUC Assets. Lienholder Assets consist of (i) the Sale Proceeds from the Lot 1 and Lot 2 Assets, (ii) Operating Cash remaining after payment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims, and (iii) claims and Causes of Action against TexOil for breach of the Lot 2 APA; *provided that* the amount available for Class 3 Statutory Lien Claimants shall not be less than $35 million. GUC Assets include $500,000 from the Lienholder Assets, funded first from Operating Cash, the Debtor's unreleased and unwaived Causes of Action not included in the Lienholder Assets, and remaining Sale Proceeds and Operating Cash, if any, after payment of the specified priority Claims. The waterfall for the Lienholder Assets is as follows: (1) Pro Rata to Holders of Allowed Administrative Expense Claims not paid on or before the Effective Date, until paid in full; (2) Pro Rata to Holders of Allowed Priority Tax Claims and Other Priority Claims not paid on or before the Effective Date, until paid in full; (3) to the Liquidating Trustee for Liquidating Trustee Expenses; and (4) Pro Rata to Holders of Allowed Statutory Lien Claims in the amounts as determined by a Final Order, until paid in full.

From the GUC Assets, Distributions shall be made in the following order: (1) Pro Rata to Holders of Allowed Administrative Expense Claims not already paid from Operating Cash and/or Sale Proceeds in excess of $35 million, until paid in full; (2) Pro Rata to Holders of Allowed Priority Tax Claims and Other Priority Claims not already paid from Operating Cash and/or Sale Proceeds in excess of $35 million, until paid in full; (3) to the Liquidating Trustee solely for administering the GUC Assets; and (4) Pro Rata to Holders of Allowed General Unsecured Claims in the amounts as determined by a Final Order, until paid in full.

The Liquidating Trust shall maintain segregated accounts for Operating Cash, proceeds of the sale of the Lot 1 and Lot 2 Assets, Liquidating Trustee Expenses, and the GUC Assets and their proceeds.

### 5. *Liquidating Trust*

On the Effective Date, the Liquidating Trust shall be created to liquidate and distribute the Liquidating Trust Assets in accordance with the Liquidating Trust Waterfalls and to wind up the Debtor's affairs. The Debtor shall transfer all Liquidating Trust Assets to the Liquidating Trust, and the appointment of the Liquidating Trustee shall be effective as of the Effective Date. The Liquidating Trustee shall be responsible for liquidating and distributing the Lienholder Assets and GUC Assets, prosecuting and liquidating Retained Causes of Action, objecting to and resolving Claims, and reviewing and, if necessary, objecting to Professional Fee Claims; provided however, that any party in interest shall also be entitled to object to Professional Fee Claims. The identity of the Liquidating Trustee will be disclosed in the Plan Supplement.

[5] The Statutory Lien Claimants reserve all rights with respect to the extent their lien claims encumber the Remaining Working Interest Owners interests in the Lot 1 Assets.

### 6. *Claims Resolution*

No Claim shall be deemed Allowed unless allowed under the Plan, by a Final Order, pursuant to a settlement, or on another basis specified in the Plan. After Consummation, the Liquidating Trustee will retain the Debtor's objections and defenses and will have exclusive authority to File, settle, compromise, withdraw, or litigate objections to Claims and to settle Disputed Claims without further Bankruptcy Court order. Unless otherwise ordered, objections must be Filed no later than 120 days after the Effective Date, subject to a possible additional 120-day extension and further Court-approved extensions.

### 7. *Distributions*

The Liquidating Trustee will make all Distributions under the Plan on a Distribution Date. No Distribution will be made on account of a Disputed Claim or a Claim already satisfied after the Petition Date. The Liquidating Trustee may recognize Holders listed in the Debtor's books and records as of the Distribution Record Date or Holders that timely Filed Proofs of Claim. No Distribution is required unless the Holder would receive at least $50; undeliverable Distributions become unclaimed property after 90 days, and checks not negotiated within 90 days become null and void. Distributions remain subject to applicable withholding, reporting, garnishment, and lien requirements, and the Liquidating Trustee may require an IRS Form W-9 or applicable Form W-8.

### 8. *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

From and after the Effective Date, the Liquidating Trust will have the exclusive right, power, and interest of the Estate to pursue, settle, or abandon Retained Causes of Action without further Bankruptcy Court order, including the NETX Litigation and claims against insurers and recipients of transfers identified in the Debtor's Statements of Financial Affairs. Confirmation will not settle, compromise, waive, preclude, or release a Retained Cause of Action unless the Plan or Confirmation Order specifically and unambiguously so provides. Causes of Action against Allowed Statutory Lien Claimants under chapter 5 of the Bankruptcy Code are released as provided in the Plan.

### 9. *Additional Trust and Wind-Down Provisions*

The Debtor will pay pre-Effective Date statutory fees and file required reports through the Effective Date; thereafter, the Liquidating Trustee will pay quarterly fees and file quarterly reports until the earliest of trust termination or case closure, dismissal, or conversion. The Debtor's managers, directors, and officers will be terminated or shall be deemed to have resigned, and the Liquidating Trustee will act as the Debtor's sole officer, director, and manager for its affairs. Books and records will be transferred to the Liquidating Trust, except records relating to the Retail Drilling Partnerships transferred to the New MGP Manager with copies for the Trust. The Plan authorizes effectuating documents, corporate actions, termination of unexpired employee arrangements, and exemption from certain taxes and fees to the fullest extent permitted by section 1146(a) of the Bankruptcy Code. The Liquidating Trust will have an initial five-year term, subject to Court-approved extension, and the Liquidating Trustee will continue to wind down its affairs after termination until its duties are complete.

### 10. *Retail Drilling Partnerships*

The Plan deems the wellbore interests owned by the Retail Drilling Partnerships valid and unavoidable as of the Effective Date of the Plan, requires the Debtor or Liquidating Trustee to provide releases and record assignments, and bars litigation to avoid or impair those interests or other assets. Statutory Lien Claimants retain any valid liens against those interests, subject to amounts paid under the Plan, and the Retail Drilling Partnerships retain their claims and defenses. On the Effective Date,

management and control will transfer to the Ad Hoc Designee: the Debtor's membership interest and rights in BSR Lone Star GP, LLC will be transferred to the New MGP Member, which will designate a New MGP Manager. The New MGP Manager may replace the managing general partner, exercise rights under the partnership agreements, and receive cooperation and assignments from the Liquidating Trustee. No claims may be asserted against the MGP for 180 days after the Effective Date, as provided in the Plan.

### 11. ***Substantial Contribution Claim***

The Plan Proponents will have Allowed Administrative Claims under section 503(b)(3)(D) in an aggregate amount of $100,000 for professional fees incurred in connection with the Plan and Disclosure Statement. Plan Proponents shall share the $100,000 based on their respective claim amount on a Pro Rata basis.

Although the Bankruptcy Code does not define what constitutes a "substantial contribution," the United States Court of Appeals for the Fifth Circuit has held that the term means a contribution that is "considerable in amount, value or worth." *In re DP Partners L.P.*, 106 F.3d 667, 672–73 (5th Cir. 1997); *see also Lebron*, 27 F.3d at 944 ("the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). "[S]ervices which make a substantial contribution are those which foster and enhance, rather than retard or interrupt the process of reorganization." *Id.* (quoting *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986)). To demonstrate that it has made a substantial contribution, an applicant must establish that "[its] services have some causal relationship to the contribution." *In re Fortune Natural Res. Corp.*, 366 B.R. 549, 554 (Bankr. E.D. La. 2007); *see also DP Partners*, 106 F.3d at 673. This Court is afforded "broad discretion" in determining "whether an applicant has provided a substantial contribution." *In re Energy Partners, Ltd.*, 422 B.R. 68, 80 (Bankr. S.D. Tex. 2009); *see also In re DP Partners Ltd.*, 106 F.3d at 673 ("case-by-case basis" analysis). In determining whether a party has made a "substantial contribution," the Court should consider the following factors:

1. whether the applying party conferred a benefit on the estate;

2. whether the services involved in the contribution were undertaken just for the applying party or for the benefit of all parties in the case;

3. whether the applying party would have done the same thing absent the expectation of compensation from the bankruptcy estate;

4. whether the benefit conferred exceeds the cost the party seeks to assess against the estate;

5. whether the services of the applying party are duplicative of those that were undertaken by statutory fiduciaries;

6. whether the party profited from postpetition acquisition of claims; and

7. whether the party engaged in improper conduct in the case.

*Energy Partners*, 422 B.R. at 80–86; *accord DP Partners Ltd.*, 106 F.3d at 672 (explaining that fee awards promote "meaningful" participation in the reorganization process).

The Plan Proponents satisfy the substantial contribution standard because the Chapter 11 Case has been languishing since the sale of substantially all of the Debtor's assets in November 2025, and the Plan Proponents spent considerable time and effort to propose a confirmable plan when the Debtor and the

Committee have not done so. The administrative expenses continue to pile up from the Debtor's and Committee's professionals, and the only way to limit administrative expenses is to confirm a plan and put in place a Liquidating Trustee who will efficiently resolve the remaining issues to distribute the Estate's assets. The $100,000 total claim is a small amount compared to the fees and expenses incurred each month by the Debtor's and Committee's professionals. Thus, the Bankruptcy Court should approve the Plan's substantial contribution claims.

#### 12. *Kasino/Turner Amounts*

Funds held in the Debtor's Texas Bank and Trust account ending 2679 will remain restricted pending further Court order, and amounts ordered turned over to the Estate will constitute GUC Assets.

#### 13. *Conditions Precedent*

Confirmation requires entry of a Confirmation Order acceptable to the Plan Proponents and completion of necessary actions, documents, agreements, consents, approvals, and authorizations. The Effective Date requires, among other things, a Final Confirmation Order (subject to the Plan's no-stay appeal provision), Lienholder Assets of at least $35 million for Class 3 Statutory Lien Claimants, execution of the Liquidating Trust Agreement, and delivery or filing of documents necessary to implement the Plan. The $35 million condition may be waived only by unanimous decision of the Statutory Lien Claimant Plan Proponents; other conditions may be waived by the Plan Proponents. If the conditions are not satisfied or waived, the Plan will not be consummated and the parties' rights will be preserved as provided in the Plan.

### C. Settlement, Release, Injunction and Related Provisions

#### 1. *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests, and controversies relating to contractual, legal, and subordination rights or any Distribution on account of an Allowed Claim. Entry of the Confirmation Order will constitute approval of that compromise and settlement and a finding that it is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, subject to the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle Claims and Causes of Action without further notice to or approval of the Bankruptcy Court.

#### 2. *Exculpation*

**Notwithstanding anything contained in the Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to, or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with the Plan or the Disclosure Statement, or any Distribution made pursuant to the Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct, or gross negligence. Exculpated Parties shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under or in connection with the Plan.**

3. *Injunction*

**Except as otherwise expressly provided in the Plan or Confirmation Order, or for obligations arising under the Plan, from and after the Effective Date all Entities that hold or may hold Claims or Interests, and all Entities acting on behalf of those Holders, are permanently enjoined from: (1) commencing or continuing any action or proceeding on account of or in connection with any Claims or Interests; (2) enforcing, attaching, collecting, or recovering any judgment, award, decree, or order on account of or in connection with any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance against the Debtor, the Liquidating Trust, or their property on account of or in connection with any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment against an obligation due from the Debtor, the Liquidating Trust, or their property unless the Holder timely Filed a motion seeking that right; or (5) commencing or continuing any action on account of or in connection with Claims, Interests, or Causes of Action released, exculpated, waived, settled, or barred under the Plan.**

**No Entity may commence or pursue a Claim or Cause of Action against the Debtor, an Exculpated Party, the Liquidating Trust, or the Liquidating Trustee relating to the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, the Plan Supplement, or a related transaction without the Bankruptcy Court first determining, after notice and a hearing, that the Claim or Cause of Action is colorable and specifically authorizing the action. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

**Confirmation will not constitute res judicata or otherwise bar, estop, or inhibit the Liquidating Trustee from pursuing Retained Causes of Action, including any Cause of Action not specifically identified in the Plan, Plan Supplement, Schedule of Retained Causes of Action, or Disclosure Statement, except as expressly provided in the Plan.**

4. *Term of Injunctions or Stays*

**Unless otherwise provided in the Plan or a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date will remain in full force and effect until the later of the Effective Date and the date specified in the order providing for the injunction or stay.**

5. *Tax Consequences of the Plan*

Articles IV.M and VI.E of the Plan address certain tax matters that may be relevant to Holders of Claims and Interests, including exemption from certain taxes and fees for transfers under the Plan and withholding and reporting requirements for Distributions. Holders should read and carefully consider those provisions, together with the limitations described below.

The tax discussion in the Plan and this Disclosure Statement is intended only as a summary of certain U.S. federal income tax and other tax consequences and is not a substitute for careful tax planning. The tax consequences of the Plan, including the treatment of transfers to and from the Liquidating Trust, Distributions, Claims, Interests, and any cancellation or satisfaction of obligations, may vary depending on a Holder's particular circumstances. Each Holder is strongly urged to consult its own tax advisor regarding federal, state, local, and foreign tax consequences.

The Plan authorizes the Liquidating Trustee to comply with applicable tax withholding and reporting requirements, including withholding from Distributions and conditioning a Distribution on receipt of an IRS Form W-9 or applicable Form W-8.

## V. CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, Holders of Claims should read and carefully consider the risk factors set forth below, in addition to the information in this Disclosure Statement and all attachments, exhibits, and documents incorporated by reference. The factors below should not be regarded as the only risks associated with the Plan or its implementation. The risks are particularly significant because the Plan is creditor-proposed and relies on asset liquidations, disputed-claim resolution, litigation outcomes, and a Liquidating Trust.

### A. Certain Bankruptcy Law Considerations

#### 1. *Risk of Non-Confirmation of the Plan*

Although the Plan Proponents believe that the Plan will satisfy the requirements for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion, that modifications will not be required, or that modifications would not require resolicitation. The Plan Proponents cannot assure that the Voting Classes will accept the Plan, and even if the requisite acceptances or cramdown requirements are met, the Bankruptcy Court may decline to confirm the Plan. If the Plan is not confirmed, the recoveries available to Holders in a later plan, chapter 7 case, or other proceeding are uncertain.

#### 2. *Risk of Non-Occurrence of the Effective Date*

The timing of the Effective Date cannot be assured because it depends on satisfaction or waiver of the conditions in the Plan, including entry of a Final Confirmation Order, availability of at least $35 million in Lienholder Assets for Class 3 Statutory Lien Claimants, execution of the Liquidating Trust Agreement, and completion of required documents and filings. If the conditions are not satisfied or waived, no Distributions will be made under the Plan and the parties' rights will be preserved as provided in the Plan.

#### 3. *Conversion to Chapter 7 Case*

If no chapter 11 plan can be confirmed, or if the Court determines that conversion is in the best interests of Holders, the Chapter 11 Case may be converted to chapter 7. A chapter 7 trustee would liquidate BSR's remaining oil and gas assets, subject to the mineral interest title issues,[6] statutory lien disputes, Claims, and Causes of Action, and distribute proceeds according to the Bankruptcy Code. The effect of a chapter 7 liquidation on recoveries is described in the Liquidation Analysis attached as Exhibit D.

#### 4. *Parties in Interest May Object to the Plan's Classification of Claims and Interests*

Parties in interest may object to the classification of Claims and Interests. Section 1122 of the Bankruptcy Code permits a claim or equity interest to be placed in a class only if it is substantially similar to the other claims or interests in that class. The Plan Proponents believe that the classifications comply

[6] The mineral interest title issues involve alleged issues with prepetition conveyances of the Debtor's mineral interests in the Hidden Rock Field that were either (i) not properly documented and/or (ii) not properly recorded.

with the Bankruptcy Code because each Class groups Claims or Interests that are substantially similar, but there can be no assurance that the Bankruptcy Court will agree.

#### 5. *Parties May Object to the Plan*

As discussed above, it is possible that certain parties may object to the settlement with the Remaining Working Interest Owners. The Plan Proponents believe the settlement should be approved for the reasons discussed herein, but the Bankruptcy Court may not ultimately approve the settlement. Other parties in interest may also object to the Plan, and the resolution of any such objection is uncertain.

### B. Additional Factors Affecting Recoveries

#### 1. *Claims Could Be More Than Projected*

There can be no assurance that the amount of Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, Statutory Lien Claims, or General Unsecured Claims will not exceed current estimates. The reported trade debt, lien notices, disputed working interests, rejection claims, and unresolved Causes of Action may affect the amount available for Distribution. Actual Allowed Claims may vary materially from any assumptions underlying the projected recoveries.

#### 2. *Recoveries and Timing Are Uncertain*

The amount and timing of Distributions may be affected by the value and timing of Sale Proceeds, Operating Cash, recoveries from Retained Causes of Action, the resolution of Claims, the Liquidating Trustee's administration, and other factors that cannot be predicted. Accordingly, the Plan Proponents cannot guarantee any recovery or the timing of any recovery on an Allowed Claim.

#### 3. *Liquidating Trust Administration*

The ultimate amount of Cash available to Holders depends in part on how the Liquidating Trustee administers the Liquidating Trust and liquidates the Lienholder Assets, GUC Assets, and Retained Causes of Action. Liquidating Trustee Expenses and other administration costs are paid before certain creditor recoveries, and expenses exceeding current expectations will reduce Distributions. The identity of the Liquidating Trustee will be disclosed in the Plan Supplement.

### C. Risks of Litigation

Distributions may be materially affected by litigation concerning the administration of the Plan, the NETX Litigation, the Lot 2 APA, Retained Causes of Action, and any D&O Claims. Litigation is inherently uncertain, and no particular result or recovery from the pursuit or liquidation of a Cause of Action may be presumed or assured.

### D. Additional Factors

#### 1. *Plan Proponents Could Withdraw Plan*

The Plan Proponents may revoke or withdraw the Plan before the Effective Date and may File subsequent chapter 11 plans, subject to the Bankruptcy Code and the Plan.

#### 2. *Plan Proponents Have No Duty to Update*

The statements contained in this Disclosure Statement are made by the Plan Proponents as of the date hereof, unless otherwise specified, and delivery after that date does not imply that the information has not changed. The Plan Proponents have no duty to update this Disclosure Statement unless ordered to do so by the Bankruptcy Court.

#### 3. *No Representations Outside This Disclosure Statement Are Authorized*

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code other than those set forth in this Disclosure Statement. Any representation or inducement outside this Disclosure Statement should not be relied upon in deciding whether to accept or reject the Plan.

#### 4. *No Legal or Tax Advice is Provided by This Disclosure Statement*

The contents of this Disclosure Statement should not be construed as legal, business, financial, or tax advice. Each Holder of a Claim or Interest should consult its own legal counsel, accountant, and other advisors concerning its Claim or Interest and the Plan.

This Disclosure Statement is not legal advice to any Holder and may not be relied upon for any purpose other than determining how to vote on the Plan or whether to object to confirmation of the Plan.

#### 5. *No Admission Made*

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or Holders of Claims or Interests.

#### 6. *Certain Tax Consequences*

For a discussion of tax matters relevant to the implementation of the Plan, including withholding and reporting requirements and the exemption from certain taxes and fees, see Articles IV.M and VI.E of the Plan and Section IV of this Disclosure Statement.

## VI. CONFIRMATION OF THE PLAN

### A. Confirmation Hearing

A hearing to consider approval of this Disclosure Statement and confirmation of the Plan is scheduled for [●], 2026 at [●]:[●] a.m./p.m., Courtroom 400, 4th Floor, 515 Rusk, Houston, Texas 77002 (the "Confirmation Hearing").

### B. Requirements for Confirmation of the Plan

#### 1. *Requirements of Section 1129(a) of the Bankruptcy Code*

(a) General Requirements

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

(i) All provisions, terms and conditions hereof are approved in the Confirmation Order.

(ii) The Plan complies with the applicable provisions of the Bankruptcy Code.

(iii) The Debtor has complied with the applicable provisions of the Bankruptcy Code.

(iv) The Plan has been proposed in good faith and not by any means forbidden by law.

(v) Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(vi) With respect to each Class of Claims or Interests, each Holder of an impaired Claim or impaired Interest has either accepted the Plan or will receive or retain under the Plan, on account of such Holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtor were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

(vii) Except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan.

(viii) Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims.

(ix) At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class.

(x) All fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

(b) Best Interests Test

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of a debtor's assets and properties in the context of liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of a debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Plan Proponents believe that Holders of each Impaired Class will receive property with a value not less than the value available in a chapter 7 liquidation. Class 3 will share in Lienholder Assets subject to the $35 million funding floor, Class 4 will share in GUC Assets, and Class 5 will receive no Distribution. The Liquidation Analysis supporting this comparison is attached as Exhibit D.

Absent confirmation of the Plan the Debtor will have to litigate with the Remaining Working Interest Owners and will likely lose that litigation, at significant expense to the Estate in the form of litigation costs.

Any liquidation analysis is necessarily speculative and based on assumptions and estimates subject to uncertainty, including oil and gas asset values, Sale Proceeds, Operating Cash, statutory lien validity, mineral-interest title, Claims, Causes of Action, and administrative expenses. The Liquidation Analysis is provided solely to disclose the effects of a hypothetical chapter 7 liquidation, subject to its assumptions. There can be no assurance as to values actually realized or that the Bankruptcy Court will accept the Plan Proponents' conclusions or assumptions.

(c) Feasibility

Section 1129(a)(11) requires that confirmation not be likely to be followed by liquidation or the need for further financial reorganization. The Plan is a liquidating plan and provides a mechanism for an orderly liquidation through the Liquidating Trust rather than a further reorganization. The Plan Proponents believe the Plan is feasible because it provides for segregated asset pools, priority waterfalls, reserves and expenses, Claims resolution, and Distributions, but feasibility depends on the conditions precedent, available assets, the Liquidating Trustee, and the resolution of disputed Claims and Causes of Action.

### 2. *Additional Requirements for Non-Consensual Confirmation*

The Bankruptcy Court may confirm the Plan at the request of the Plan Proponents if, as to each Impaired Class that rejects or is deemed to reject the Plan, the Plan does not discriminate unfairly and is fair and equitable under section 1129(b) of the Bankruptcy Code. These requirements apply in addition to the other confirmation requirements and applicable case law.

(a) Unfair Discrimination Test

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan does not discriminate unfairly, within

the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Plan Proponents believe the Plan satisfies the unfair-discrimination test because Claims of equal priority receive comparable treatment under the applicable waterfalls and no Class receives more than it is legally entitled to receive.

(b) Fair and Equitable Test

The Plan Proponents submit that, if necessary, the Plan can be confirmed under section 1129(b) because it provides the treatment required for each Class, limits recoveries to amounts permitted by the Bankruptcy Code, and allocates value through the Lienholder Assets and GUC Assets waterfalls. The Plan Proponents believe the Plan and the treatment of all Classes satisfy the requirements for non-consensual Confirmation.

## VII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponents have evaluated alternatives to the Plan. After considering the available information, the Plan Proponents believe the Plan is the best available alternative for maximizing recoveries and providing an orderly liquidation, assuming Confirmation and Consummation. If the Plan is not confirmed or consummated, alternatives include an amended or alternative plan, continued asset sales or litigation, conversion to chapter 7, or liquidation under applicable non-bankruptcy law.

### A. Alternative Plan

If the Plan is not confirmed, the Debtor, the Plan Proponents, the Committee, or another party in interest could attempt to formulate a different plan. An alternative plan might provide different treatment or pursue a different asset-sale, litigation, or trust structure, but could require additional negotiations, notice, solicitation, and professional expense. The Plan Proponents believe the Plan provides the clearest orderly-liquidation framework under the circumstances.

### B. Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law

If no plan can be confirmed, the Chapter 11 Case may be converted to chapter 7, in which a trustee would liquidate the Debtor's oil and gas assets and distribute proceeds according to the Bankruptcy Code. The effect of a chapter 7 liquidation on recoveries is addressed in the Liquidation Analysis attached as Exhibit D.

The Plan Proponents believe a chapter 7 liquidation could result in smaller or delayed distributions because of conversion-related delay, a trustee's fees and expenses, additional professional costs, and the need to address the priority and validity of statutory lien claims.

## VIII. CONCLUSION AND RECOMMENDATION

The Plan Proponents believe the Plan is in the best interests of Holders of Claims and provides the most efficient framework for liquidating the Debtor's assets, resolving Claims and Causes of Action, and distributing available value. The Plan Proponents urge Holders of Claims in Classes 3 and 4 to vote in favor of the Plan.

Dated: September 10, 2026
Houston, Texas

Respectfully submitted,

**PORTER HEDGES LLP**
M. Shane Johnson
Michael Dearman
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
sjohnson@porterhedges.com
michael.dearman@porterhedges.com

**COUNSEL FOR MIDDLETON OIL COMPANY**

**DORÉ ROTHBERG LAW, P.C.**
Lisa Rothberg
Connor Smith
16225 Park Ten Place Dr., Suite 700
Houston, Texas 77084
Telephone: (281) 829-1555
Facsimile: (281) 200-0751
lrothberg@dorelaw.com

**COUNSEL FOR AXIS ENERGY SERVICES, LLC, DOC ENERGY SERVICES, INC., CUDD PRESSURE CONTROL, INC., THRU TUBING SOLUTIONS, INC. GENESIS FLUIDS, LLC, FORCE PRESSURE CONTROL, LLC, AND RELIANCE WELL SERVICE, INC.**

**MEHAFFYWEBER**
Holly Hamm
P.O. Box 16
Beaumont, Texas 77704
Telephone: (409) 835-5011
Facsimile: (409) 835-5177
HollyHamm@mehaffyweber.com

**COUNSEL FOR CACTUS WELLHEAD, LLC AND PRINCESS THREE OPERATING, LLC**

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland
Julie Goodrich Harrison
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-3769
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

**COUNSEL FOR PATTERSON-UTI DRILLING COMPANY LLC, MS DIRECTIONAL, LLC, AND ULTERRA DRILLING TECHNOLOGIES, LP**

**PORTER HEDGES LLP**
Eric M. English
James A. Keefe
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
eenglish@porterhedges.com
jkeefe@porterhedges.com

**COUNSEL FOR THE AD HOC GROUP**

# Exhibit A

## CREDITORS' LIQUIDATING PLAN OF BARROW SHAVER RESOURCES COMPANY, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BARROW SHAVER RESOURCES COMPANY, LLC,[1] | § | Case No. 24-33353 |
| | § | |
| | § | Jointly Administered |
| Debtor. | § | |
| | § | |

**CREDITORS' LIQUIDATING PLAN OF BARROW SHAVER**
**<u>RESOURCES COMPANY, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

[1] The last four digits of the Debtor's federal tax identification number are 0510. The Debtor's corporate headquarters is located at 977 Pruitt Place, Tyler, TX 75703. All pleadings, as well as additional information related to the administration of the above-captioned Bankruptcy Case, are accessible free of charge on the case website at the following link: https://cases.ra.kroll.com/BSR/.

**PORTER HEDGES LLP**
M. Shane Johnson
Michael Dearman
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
sjohnson@porterhedges.com
michael.dearman@porterhedges.com

**COUNSEL FOR MIDDLETON OIL COMPANY**

**DORÉ ROTHBERG LAW, P.C.**
Lisa Rothberg
Connor Smith
16225 Park Ten Place Dr., Suite 700
Houston, Texas 77084
Telephone: (281) 829-1555
Facsimile: (281) 200-0751
lrothberg@dorelaw.com

**COUNSEL FOR AXIS ENERGY SERVICES, LLC, DOC ENERGY SERVICES, INC., CUDD PRESSURE CONTROL, INC., THRU TUBING SOLUTIONS, INC. GENESIS FLUIDS, LLC, FORCE PRESSURE CONTROL, LLC, AND RELIANCE WELL SERVICE, INC.**

**MEHAFFYWEBER**
Holly Hamm
P.O. Box 16
Beaumont, Texas 77704
Telephone: (409) 835-5011
Facsimile: (409) 835-5177
HollyHamm@mehaffyweber.com

**COUNSEL FOR CACTUS WELLHEAD, LLC AND PRINCESS THREE OPERATING, LLC**

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland
Julie Goodrich Harrison
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-3769
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

**COUNSEL FOR PATTERSON-UTI DRILLING COMPANY LLC, MS DIRECTIONAL, LLC, AND ULTERRA DRILLING TECHNOLOGIES, LP**

**PORTER HEDGES LLP**
Eric M. English
James A. Keefe
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
eenglish@porterhedges.com
jkeefe@porterhedges.com

**COUNSEL FOR THE AD HOC GROUP**

Dated: September 10, 2026

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ........ 1

A. Defined Terms ........ 1
B. Rules of Interpretation ........ 9
C. Computation of Time ........ 10
D. Governing Law ........ 10
E. Reference to Monetary Figures ........ 10
F. Controlling Document ........ 10

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ........ 11

A. Administrative Claims ........ 11
B. Professional Compensation ........ 11
C. Priority Tax Claims ........ 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 12

A. Introduction ........ 12
B. Summary of Classification ........ 12
C. Treatment of Claims and Interests ........ 12

1. Class 1: Other Priority Claims ........ 12
2. Class 2: Other Secured Claims ........ 13
3. Class 3: Statutory Lien Claims ........ 13
4. Class 4: General Unsecured Claims ........ 13
5. Class 5: Interests ........ 14

D. Provision Governing Unimpaired Claims ........ 14
E. Elimination of Vacant Classes ........ 14

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ........ 14

A. Transactions Effective as of the Effective Date ........ 14
B. Cancellation of Securities and Agreements ........ 14
C. Settlement with Working Interest Owners ........ 15
D. Liquidating Trust Waterfalls ........ 15
E. Liquidating Trust ........ 15
F. Authority to Pursue, Settle, or Abandon Retained Causes of Action ........ 16
G. Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ........ 17
H. Directors and Officers of the Debtor ........ 17
I. Books and Records ........ 17
J. Corporate Authorization ........ 18
K. Effectuating Documents and Further Transactions ........ 18
L. Employee Agreements ........ 18
M. Exemption from Certain Taxes and Fees ........ 18
N. Duration of the Liquidating Trust ........ 18
O. Wind Down of Liquidating Trust ........ 18
P. Retail Drilling Partnerships ........ 19
Q. Substantial Contribution Claim ........ 20
R. Kasino/Turner ........ 20

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 20

A. Treatment of Executory Contracts and Unexpired Leases ............ 20
B. Rejection Damages Claim ............ 20

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............ 20

A. Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions ............ 20

1. Timing and Calculation of Amounts to be Distributed ............ 20
2. Entitlement to Distributions ............ 21

B. Liquidating Trustee to Make Distributions ............ 21
C. No De Minimis Distributions Required ............ 21
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions ............ 21

1. Delivery of Distributions in General ............ 21
2. Undeliverable Distributions and Unclaimed Property ............ 21
3. Failure to Present Checks ............ 22

E. Compliance with Tax Requirements/Allocations ............ 22

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ............ 22

A. Allowance and Disallowance of Claims ............ 22
B. Prosecution of Objections to Claims ............ 23
C. Deadline to Object to Claims ............ 23

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ............ 23

A. Conditions Precedent to Confirmation ............ 23
B. Conditions Precedent to the Effective Date ............ 23
C. Waiver of Conditions ............ 24
D. Effect of Nonoccurrence of Conditions ............ 24

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............ 24

A. Compromise and Settlement of Claims, Interests, and Controversies ............ 24
B. Exculpation ............ 24
C. Injunction ............ 25
D. Term of Injunctions or Stays ............ 25

ARTICLE X. BINDING NATURE OF PLAN ............ 25

ARTICLE XI. RETENTION OF JURISDICTION ............ 26

ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ............ 27

A. Modifications and Amendments ............ 27
B. Effect of Confirmation on Modifications ............ 28
C. Revocation or Withdrawal of the Plan ............ 28
D. Substantial Consummation of the Plan ............ 28

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............ 28

A. Successors and Assigns ............ 28
B. Dissolution of Committee ............ 28
C. Nonseverability of Plan Provisions ............ 28

D. Entire Agreement ........................................ 29
E. Votes Solicited in Good Faith ........................................ 29
F. Filing of Additional Documents ........................................ 29

# INTRODUCTION

The undersigned creditors of Barrow Shaver Resources Company, LLC respectfully propose the following plan of liquidation under Chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof.

Following the Effective Date, the Debtor's assets will be placed into the Liquidating Trust. The Liquidating Trustee will be responsible for taking the necessary and appropriate actions to liquidate the remaining assets of the Debtor's Estate, make Distributions to Holders of Allowed Claims, and to proceed with an orderly, expeditious, and efficient wind-down of the Debtor's Estate in accordance with the terms of the Plan.

The Plan Proponents believe that the Distributions under the Plan will provide all Holders of Claims against the Debtor at least as great a recovery on account of Allowed Claims than would a liquidation of the Debtor's assets conducted under chapter 7 of the Bankruptcy Code. Furthermore, Distributions under the Plan to Holders of Allowed Claims would be made more quickly than Distributions by a chapter 7 trustee, and a chapter 7 trustee would charge a substantial fee, reducing the amount available for Distribution on account of Allowed Claims. Thus, the Plan Proponents believe that Confirmation and Consummation of the Plan is in the best interests of all Holders of Claims.

Under the Bankruptcy Code, only Holders of Claims in certain "impaired" Classes are entitled to vote on the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (a) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (b) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

A detailed description of (a) the treatment of Claims and Interests under the Plan, (b) which Classes are Impaired by the Plan, and (c) which Classes are entitled to vote on the Plan is provided under Article III below.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A. *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1. "*Ad Hoc Designee*" means the designee of the Ad Hoc Group for the management and control of the Retail Drilling Partnerships, as further described in Article IV.P.

2. "*Ad Hoc Group*" means, collectively, Mark Atchity, Kirsten Eriksson, Sterling Louviere, Aaron Pollack, Shaun Eck, and Lawrence Steinberg, Jr.

3. "*Administrative Claim*" means a Claim pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the estate pursuant to section 1930 of chapter 123 of the Judicial Code.

4. "*Administrative Claims Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which (a) with respect to Administrative Claims other than Professional Fee Claims, shall be twenty-one (21) days after the Effective Date and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

5. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6. "*Allowed*" means, with respect to any Claim or Interest, as applicable, except to the extent that this Plan provides otherwise, any portion thereof: (a) that is allowed under the Plan, by Final Order, or pursuant to a settlement; (b) that is evidenced by a Proof of Claim timely filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim filed by the Administrative Claims Bar Date, as applicable (or that is not required to be evidenced by a filed Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order); or (c) that is scheduled by the Debtor as not disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed; *provided that*, with respect to a Claim or Interest described in clauses (b) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that such Claim or Interest is not Disallowed and no objection to the allowance of such Claim or Interest is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. No Claim of any entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes the Debtor.

7. "*Avoidance Litigation Account*" shall have the meaning ascribed to such term in the Lot 2 APA.

8. "*Ballots*" means the ballots approved by the Bankruptcy Court in the Disclosure Statement Order upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as amended, and as applicable to the Chapter 11 Case.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

12. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13. "*Cash*" means the legal tender of the United States of America and equivalents thereof, including bank deposits and checks.

14. "*Causes of Action*" means, without limitation, any claim, interest, damage, remedy, cause of action, controversy, demand, right, right of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-party claim, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable or existing directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or similar non-U.S. or state law; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

15. "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor in the Bankruptcy Court.

16. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

17. "*Claims Bar Date*" means the applicable deadline by which proofs of Claim must be Filed.

18. "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

19. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time.

20. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the order confirming the Plan on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

22. "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

23. "*Consummation*" means the occurrence of the Effective Date.

24. "*D&O Claims*" means Causes of Action against the Debtor's current and former officers, directors, managers, and members.

25. "*Debtor*" or "*Debtor in Possession*" means the entity in the above-captioned Chapter 11 Case, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Case under sections 1107 and 1108 of the Bankruptcy Code.

26. "*Deficiency Claim*" means any deficiency claim of the holder of an Allowed Other Secured Claim or Statutory Lien Claim after the proceeds from the applicable property securing such claim have been exhausted.

27. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated, and as to which no Proof of Claim or request for payment of an Administrative Claim has been filed or deemed filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been filed or deemed filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed filed under applicable law or the Plan; (d) has been withdrawn by agreement of the Debtor and the holder thereof; or (e) has been withdrawn by the holder thereof.

28. "*Disclosure Statement*" means the *Disclosure Statement for the Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC under Chapter 11 of the Bankruptcy Code*, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

29. "*Disclosure Statement Order*" means the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Creditors' Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief*.

30. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed or Disallowed.

31. "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan, the Confirmation Order, and, if applicable, the Liquidating Trust Agreement.

32. "*Distribution Date*" means (a) the Effective Date or (b) any Subsequent Distribution Date.

33. "*Distribution Record Date*" means the date on which the Confirmation Order is entered.

34. "*Effective Date*" means the date selected by the Plan Proponents upon which all of the conditions to substantial consummation of the Plan have been satisfied in full or waived and the Plan becomes effective.

35. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

36. "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

37. "*Exculpated Party*" means each of the Plan Proponents.

38. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

39. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in or in connection with the Chapter 11 Case.

40. "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided, however,* that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be Filed with respect to such order and shall not cause such order not to be a Final Order.

41. "*General Unsecured Claim*" means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court. Claimants that have asserted secured or unsecured claims solely against Lot 3 Assets shall be deemed to hold General Unsecured Claims.

42. "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

43. "*GUC Assets*" means the following: (i) $500,000 from the Lienholder Assets, to be funded first from Operating Cash; and (ii) the Debtor's claims and Causes of Action not released or waived pursuant to the Plan and not included in the Lienholder Assets. GUC Assets shall also include any remaining Sale Proceeds and Operating Cash remaining after distributions are made to pay in full any Allowed Administrative Expense Claims, Priority Tax Claims, and Class 1-3 Claims. For the avoidance of doubt, any claims and Causes of Action against the Remaining Working Interest Owners shall not be GUC Assets, but all other claims and Causes of Action included in the Lot 2 Assets that have not been resolved shall be GUC Assets to be pursued by the Liquidating Trustee, subject to the terms of the Lot 2 APA.

44. "*Holder*" means any Entity holding a Claim or an Interest.

45. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

46. "*Interest*" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, that existed immediately before the Effective Date.

47. "*Involuntary Gap Claims*" means a Claim pursuant to sections 507(a)(3) of the Bankruptcy Code.

48. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

49. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

50. "*Lien Determination Procedures*" means the procedures for determining the validity, priority, and extent of Statutory Lien Claims.

51. "*Lienholder Assets*" means (i) the Sale Proceeds from the Lot 1 and Lot 2 Assets, and (ii) the Debtor's Operating Cash on hand on the Effective Date after paying Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims, and (iii) any claims and Causes of Action against TexOil for breach of the Lot 2 APA; provided that the total amount available for distribution to Class 3 Statutory Lien Claimants shall not be less than $35 million.

52. "*Liquidating Trust*" means the "Liquidating Trust" established under the Plan pursuant to the Liquidating Trust Agreement.

53. "*Liquidating Trust Agreement*" means the agreement creating the Liquidating Trust in form and substance acceptable to the Plan Proponents to be Filed as part of the Plan Supplement, which will, among other things: (a) establish and govern the Liquidating Trust; (b) set forth the powers and duties of the Liquidating Trustee; and (c) provide for Distribution of the Liquidating Trust Assets, if any, to the Liquidating Trust Beneficiaries.

54. "*Liquidating Trust Assets*" means, collectively, the GUC Assets and the Lienholder Assets.

55. "*Liquidating Trust Beneficiaries*" means the Holders of Allowed Administrative Claims, Other Priority Claims, Priority Tax Claims, Other Secured Claims, Statutory Lien Claims, and General Unsecured Claims.

56. "*Liquidating Trustee*" means an individual selected by the Plan Proponents.

57. "*Liquidating Trustee Expenses*" means $500,000 to administer the Lienholder Assets and GUC Assets, which amount shall only be increased upon the written consent of each of the Plan Proponents' counsel with unpaid or unresolved claims at the time of the request for additional funds.

58. "*Liquidating Trustee Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee.

59. "*Liquidating Trust Waterfalls*" means the priority of distributions by the Liquidating Trustee from the Liquidating Trust as set forth in Article IV.D of this Plan.

60. "*Lot 1 Assets*" shall have the meaning ascribed to Assets in the Asset Purchase Agreement between the Debtor and TexOil Investments, LLC filed at Docket No. 932.

61. "*Lot 2 APA*" means the Asset Purchase Agreement between the Debtor and TexOil Investments, LLC dated January 23, 2026 filed at Docket No. 1173-7.

62. "*Lot 2 Assets*" shall have the meaning ascribed to "Assets" in the Lot 2 APA.

63. "*Lot 3 Assets*" shall have the meaning ascribed to Assets in the Asset Purchase Agreement between the Debtor and TexOil Investments, LLC filed at Docket No. 934.

64. "*MGP*" means BSR Lone Star GP, LLC.

65. "*Mineral Interest Order*" means the *Final Order (I) Authorizing the Debtor to Pay or Apply Payments Attributable to Mineral Interests in the Ordinary Course and (II) Granting Related Relief* [Docket No. 237].

66. "*NETX Litigation*" shall have the meaning ascribed to such term in the Lot 2 APA.

67. "*New MGP Manager*" means the entity designated by the New MGP Member to be manager of the MGP.

68. "*New MGP Member*" means the entity created by the Ad Hoc Designee that receives the Debtor's membership interest and all rights in the MGP.

69. "*Operating Cash*" means Cash designated as "Operating Cash" in the Debtor's Monthly Operating Report [Docket No. 1331-1, p. 2] that is held by the Debtor in the Texas Bank and Trust bank accounts ending 9224, 6370, 6362, 7324, 7197, 9410, 7766, 9534, 1039, 1222, 4892, and 4906.

70. "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, including Involuntary Gap Claims, to the extent such Claim has not already been paid during the Chapter 11 Case, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

71. "*Other Secured Claim*" means a Secured Claim other than a Statutory Lien Claim.

72. "*Petition Date*" means August 19, 2024.

73. "*Plan*" means this *Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC Under Chapter 11 of the Bankruptcy Code*, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits attached hereto, which are incorporated herein by reference.

74. "*Plan Proponents*" means Middleton Oil Company, Patterson-UTI Drilling Company LLC, MS Directional, LLC, Ulterra Drilling Technologies, LP, Cactus Wellhead, LLC, Princess Three Operating, LLC, Axis Energy Services, LLC, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc. Genesis Fluids, LLC, Force Pressure Control, LLC, Reliance Well Service, Inc., and the Ad Hoc Group.

75. "*Plan Supplement*" means the supplemental appendix to this Plan, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, the Schedule of Retained Causes of Action, the Lien Determination Procedures, and any schedules, lists, or documents contemplated by this Plan that are identified as part of the Plan Supplement.

76. "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor entitled to priority as specified in section 507(a)(8) of the Bankruptcy Code.

77. "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion

that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

78. "*Professional*" means any entity (a) employed pursuant to an order of the Bankruptcy Court in connection with the Chapter 11 Case pursuant to sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

79. "*Professional Fee Claims*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been previously paid.

80. "*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Chapter 11 Case.

81. "*Purchase Price Floor*" shall have the meaning ascribed to such term in the Lot 2 APA.

82. "*Remaining Working Interest Owners*" means all existing working interest owners listed on Exhibit A to the Lot 2 APA [Docket No. 933-1, p. 3 of 15] that have not settled with the Debtor and TexOil prior to the Effective Date, including Middleton Oil Company and the Retail Drilling Partnerships.

83. "*Retail Drilling Partnerships*" means, collectively, BSR Lone Star Drilling Fund I and BSR Lone Star Opportunity Zone Fund LP.

84. "*Retained Causes of Action*" means all Causes of Action of the Debtor, including the D&O Claims, that are not released or waived pursuant to the Plan. The Debtor's claims and Causes of Action against the Remaining Working Interest Owners are not "Retained Causes of Action."

85. "*Sale*" means the sale of substantially all of the Debtor's assets pursuant to the Sale Order.

86. "*Sale Order*" means the *Order Granting Debtor's Emergency Motion for Entry of an Order (I) Approving the Sale of the Substantial Majority of the Debtor's Assets to TexOil Investments, LLC, (II) Authorizing the Debtor to Entry into the TexOil Asset Purchase Agreements, (III) Approving the Sale of the Assets Free and Clear of Claims, Liens, Interests, and Encumbrances, (IV) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases as set forth in the TexOil Asset Purchase Agreements, and (V) Granting Related Relief* [Docket No. 972].

87. "*Sale Proceeds*" means the proceeds from the sale of the Lot 1 and Lot 2 Assets, in an amount not less than $35 million.

88. "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action to be retained by the Estate and contributed to the Liquidating Trust, which shall be included in the Plan Supplement.

89. "*Secured*" means, with respect to a Claim, (a) secured by a Lien on property in which any of the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined

pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code or (b) Allowed, pursuant to the Plan or a Final Order of the Bankruptcy Court, as a secured Claim.

90. "*Statement of Financial Affairs*" means the Statement of Financial Affairs Filed by the Debtor, as may be amended.

91. "*Statutory Lien Claimant Plan Proponents*" means Patterson-UTI Drilling Company LLC, MS Directional, LLC, Ulterra Drilling Technologies, LP, Cactus Wellhead, LLC, Princess Three Operating, LLC, Axis Energy Services, LLC, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc. Genesis Fluids, LLC, Force Pressure Control, LLC, and Reliance Well Service, Inc.

92. "*Statutory Lien Claimants*" means, collectively, the purported Holders of Statutory Lien Claims.

93. "*Statutory Lien Claims*" means statutory Lien Claims, including but not limited to mechanics and materialmen's Lien Claims pursuant to Chapter 53 of Title 5 of the Texas Property Code or a mineral Lien Claim pursuant to Chapter 56 of Title 5 of the Texas Property Code, asserted on the Lot 1 or Lot 2 Assets.

94. "*Subsequent Distribution Date*" means any date after the Effective Date on which either Liquidating Trustee makes a Distribution after determining that a Distribution should be made in light of, *inter alia,* resolutions of Disputed Claims, the administrative costs of such a Distribution, and remaining Cash on hand after making the Distribution.

95. "*TexOil*" means, collectively, TexOil Investments, LLC and TexOil ET, LLC.

96. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

97. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

98. "*Unsecured*" means not Secured.

B. *Rules of Interpretation*

For purposes of this Plan, unless otherwise specified herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan

shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Case, unless otherwise stated; (14) any immaterial effectuating provisions may be interpreted by the Debtor or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (15) except as otherwise provided, any references to the Effective Date shall mean on the Effective Date or as soon as reasonably practicable thereafter.

C. *Computation of Time*

Unless otherwise specifically stated herein, in computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D. *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated in governing documents, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided, however,* that corporate or limited liability company governance matters relating to the Debtor not incorporated in Texas shall be governed by the laws of the state of incorporation or formation (as applicable).

E. *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to legal tender of the United States of America, unless otherwise expressly provided.

F. *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the terms of the Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement (including the Liquidating Trust Agreement), the terms of the Plan shall control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control. In the event of any inconsistency between the Plan, the Confirmation Order, or Plan Supplement (including the Liquidating Trust Agreement), the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. *Administrative Claims*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or the Liquidating Trustee, as applicable, or otherwise provided for under the Plan, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each holder of an Allowed Administrative Claim shall be paid first from the Debtor's Operating Cash, next from the Sale Proceeds in excess of $35 million, and then from the GUC Assets, an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in full and final satisfaction, compromise, settlement, release, and discharge of such Administrative Claim.

Except for Claims subject to section 503(b)(9) of the Bankruptcy Code (for which the Claims Bar Date applies), Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and Professional Fee Claims, requests for payment of Administrative Claims arising between the Petition Date and the Effective Date must be Filed and served on the Liquidating Trustee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 60 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE CLAIM BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION FROM THE DEBTOR OR THE LIQUIDATING TRUST OR ANY NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT OR ANY OTHER ENTITY.**

B. *Professional Compensation*

Final fee applications for any Professional Fee Claim shall be Filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules. Prior to Confirmation the Professionals shall provide the Plan Proponents with a good faith estimate of their unpaid Professional Fee Claims through the Effective Date. The Liquidating Trustee shall review and, if necessary, object to the Professionals' final fee applications; *provided however*, that nothing herein precludes any other party-in-interest from also objecting to any Professionals' final fee applications.

C. *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code and the Liquidating Waterfalls. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Liquidating Trustee and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B. *Summary of Classification*

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Statutory Lien Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C. *Treatment of Claims and Interests*

1. Class 1: Other Priority Claims

a. *Treatment*: Each holder of an Allowed Other Priority Claim shall receive in full and complete settlement, release, and discharge of such claim (i) payment in full in Cash on account of the unpaid portion of such claim first from the Debtor's Operating Cash, next from the Sale Proceeds in excess of $35 million, and then from the GUC Assets pursuant to the Liquidating Waterfalls, on the later of (a) the Effective Date (or as soon thereafter as reasonably practicable) and (b) as soon as reasonably

practicable after the date such claim becomes due and payable; (ii) such other less favorable treatment as to which the Debtor or the Liquidating Trustee and the holder of such Priority Claim have agreed; or (iii) such other treatment rendering its allowed Priority Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

b. *Voting*: Class 1 is Unimpaired under the Plan and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

2. Class 2: Other Secured Claims

a. *Treatment*: On or as soon as practicable after the Effective Date, each holder of an Allowed Other Secured Claim shall receive at the Liquidating Trustee's election, except to the extent that any holder of an Allowed Other Secured Claim agrees to less favorable treatment, either: (i) Cash equal to the amount of such Allowed Other Secured Claim; (ii) the property that serves as security for such Allowed Other Secured Claim; or (iii) such other treatment that shall render such Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. Any Deficiency Claim of a holder of an Other Secured Claim shall be treated as a General Unsecured Claim in Class 4.

b. *Voting*: Class 2 is Unimpaired under the Plan and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. Class 3: Statutory Lien Claims

a. *Treatment*: Each holder of an Allowed Statutory Lien Claim shall receive its Pro Rata share of the Lienholder Assets pursuant to the Liquidating Trust Waterfalls. Each Allowed Statutory Lien Claim shall be paid on a Pro Rata basis as if each Statutory Lien Claimant held a valid lien on the entirety of the Debtor's Lot 1 and Lot 2 Assets. In addition, Causes of Action for potential preference claims against Allowed Statutory Lien Claimants under chapter 5 of the Bankruptcy Code (11 U.S.C. § 547 et seq.) shall be released and waived.

b. *Voting*: Class 3 is Impaired under the Plan. Holders of Statutory Lien Claims are entitled to vote to accept or reject the Plan.

4. Class 4: General Unsecured Claims

a. *Treatment*: Each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Assets pursuant to the Liquidating Trust Waterfalls.

b. *Voting*: Class 4 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5. Class 5: Interests

a. *Treatment*: Interests shall be cancelled and discharged, with the Holders of such Interests receiving no Distribution on account of such Interests.

b. *Voting*: Class 5 is Impaired under the Plan. Holders of Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

D. *Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtor's, Estate's, or the Liquidating Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

E. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the commencement of the Confirmation Date shall be considered vacant and deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A. *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor, their board of directors, their stockholders, or any other Entity.

B. *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in this Plan, (1) the obligations of the Debtor under any membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, or warrants shall be cancelled solely as to the Debtor, and the Liquidating Trustee shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, shares, notes, bonds, indentures, purchase rights, options, or warrants shall be released and discharged. As soon as reasonably practicable after the Effective Date, the Liquidating Trustee will enter into such transactions as may be necessary or appropriate on the Debtor's behalf to merge, dissolve, or otherwise terminate the corporate existence of the Debtor in accordance with the Liquidating Trust Agreement and the constituent documents; *provided*, that the Liquidating Trustee may dissolve the Debtor on a later date in order to promote efficiencies in the accrual of tax and other payment liabilities.

C. *Settlement with Working Interest Owners*

As of the Effective Date, the Plan deems all working interests owned by the Remaining Working Interest Owners valid and unavoidable. The Remaining Working Interest Owners shall not be entitled to a separate or double recovery for the amounts paid to them under the Mineral Interest Order. The Debtor shall provide a release to the Remaining Working Interest Owners, shall record their assignments in the real property records, and shall not pursue any litigation against the Remaining Working Interest Owners to avoid or otherwise impair their working interests. In exchange, $5 million in the Avoidance Litigation Account (plus accrued interest) shall constitute Operating Cash for purposes of the Liquidating Waterfalls used first to pay Administrative Expense Claims and $5 million of Operating Cash shall be contributed to the Liquidating Trust for the benefit of Class 3 Statutory Lien Claimants.

The Statutory Lien Claimants will maintain any valid lien claims that have or may be asserted against the working interests owned by the Remaining Working Interest Owners (after reducing their claims by the amounts paid to them under the Plan) with the same rights as existed immediately prior to the Effective Date, and the Remaining Working Interest Owners shall maintain any claims and defenses against the Statutory Lien Claimants.

Amounts above the $16.24 million Purchase Price Floor that are currently held in escrow related to the working interests held by the Remaining Working Interest Owners shall be returned to TexOil.

D. *Liquidating Trust Waterfalls*

Priority of distributions from the Lienholder Assets shall be pursuant to the following waterfall, with the Operating Cash used first before any Sale Proceeds:

1. Pro Rata to holders of Allowed Administrative Expense Claims not paid on or before the Effective Date, until paid in full;
2. Pro Rata to holders of Allowed Priority Tax Claims and Other Priority Claims not paid on or before the Effective Date until paid in full;
3. Liquidating Trustee Expenses;
4. Pro Rata to the holders of Allowed Statutory Lien Claims in the amounts as determined by a final order or orders of the Bankruptcy Court until paid in full.

Priority of distributions from the GUC Assets shall be pursuant to the following waterfall:

1. Pro Rata to holders of Allowed Administrative Expense Claims not paid first from Operating Cash or Sale Proceeds in excess of $35 million, until paid in full;
2. Pro Rata to holders of Allowed Priority Tax Claims and Other Priority Claims not paid first from Operating Cash or Sale Proceeds in excess of $35 million, until paid in full;
3. To the Liquidating Trustee solely related to administering the GUC Assets; and
4. Pro Rata to holders of Allowed General Unsecured Claims in the amounts as determined by a final order or orders of the Bankruptcy Court until paid in full.

E. *Liquidating Trust*

On the Effective Date, the Liquidating Trust shall be created to liquidate and distribute the Liquidating Trust Assets in accordance with the Liquidating Trust Waterfall and to wind up the Debtor's

affairs. On the Effective Date, the Debtor, pursuant to the Plan, shall transfer all of the Liquidating Trust Assets to the Liquidating Trust for distribution in accordance with the Plan.

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement. The purpose of the Liquidating Trust shall be to (i) liquidate and distribute the Lienholder Assets and the GUC Assets; (ii) prosecute and liquidate any Retained Causes of Action, including the NETX Litigation; (iii) object, resolve, or settle all Claims; and (iv) review and, if necessary, object to Professional Fee Claims. The Liquidating Trustee shall have sole responsibility for objecting to, resolving, or settling all Claims; *provided however*, that any party-in-interest may also object to any Professional Fee Claims.

Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to exercise all powers and duties as set forth in the Liquidating Trust Agreement, including, but not limited to: (i) entering into and granting settlements, releases, and compromises, for which approval from the Bankruptcy Court shall not be required; and (ii) retaining professionals and advisors, attorneys and accountants, as the Liquidating Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

The Liquidating Trust shall maintain at least four segregated accounts. One segregated account shall hold the Operating Cash. Another segregated account shall hold proceeds of the sale of the Lot 1 and Lot 2 Assets. Another segregated account shall hold an amount sufficient to pay the Liquidating Trustee Expenses. And the final segregated account shall hold the GUC Assets and their proceeds.

F. *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

From and after the Effective Date, (i) the Liquidating Trust shall be solely responsible for prosecution and settlement of all Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, and (ii) the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Retained Causes of Action without further Bankruptcy Court order. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this Plan or the Confirmation Order specifically and unambiguously so provides.

The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action.

**The Liquidating Trust reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtor and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; or (ii) any recipient of a transfer identified in the Debtor's Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Case based on Retained Causes of Action under chapter 5 of the Bankruptcy Code (other than with respect to the Allowed Statutory Lien Claimants which chapter 5 claims are being released hereunder). THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE RELATING TO RETAINED CAUSES OF**

**ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

**The Schedule of Retained Causes of Action, listing Causes of Action to be retained by the Liquidating Trust is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Liquidating Trust will not pursue any and all available Causes of Action against it. The Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

G. *Filing of Monthly and Quarterly Reports and Payment of Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) prior to the Effective Date shall be paid by the Debtor in full in Cash on the Effective Date. The Debtor shall File all reports for each month (including any fraction thereof) through the Effective Date. Following the Effective Date, the Liquidating Trustee shall pay such fees in full in Cash when due and payable, and shall File with the Bankruptcy Court reports for each quarter (including any fraction thereof). The Liquidating Trustee shall remain obligated to pay U.S. Trustee quarterly fees and to File quarterly reports until the earliest of the Liquidating Trust termination or the cases are closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code.

H. *Directors and Officers of the Debtor*

On and after the Effective Date, the board of managers or directors of the Debtor shall be terminated and all of the officers, managers, and directors of the Debtor, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtor, as applicable. As of the Effective Date, the Liquidating Trustee shall act as the Debtor's sole officer, director, and manager, as applicable, with respect to the Debtor's affairs.

I. *Books and Records*

Upon the Effective Date, the Debtor (including its Professionals) shall transfer and assign (i) to the New MGP Manager all books and records related to the Retail Drilling Partnerships that are in the Debtor's or the MGP's possession, with a copy made for the Liquidating Trust; and (ii) to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtor other than those transferred to the New MGP Manager, including the Debtor's lien analysis and any related work product. Upon the Effective Date, the Committee shall transfer and assign to the Liquidating Trust the books and records related to the Committee's investigations of Causes of Action during the Chapter 11 Case. Any such books and records transferred by either the Debtor or the Committee shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred under the Plan by the Debtor and the Committee for the duration of the Liquidating Trust, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtor and the Committee shall cooperate with the Liquidating Trustee to facilitate the delivery and storage of their books and records in accordance with this Plan.

J. *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtor. After the Effective Date, to the extent necessary, the Liquidating Trustee shall have all authority, subject to the terms of this Plan and the Liquidating Trust Agreement, to address any and all matters other than those delegated under the Plan to the Liquidating Trust that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of the Debtor.

K. *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Debtor shall execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

L. *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements (including any employee benefits) in place with the Debtor's employees that have not been previously terminated shall be terminated as of the Effective Date.

M. *Exemption from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

N. *Duration of the Liquidating Trust*

The Liquidating Trust shall have an initial term of five (5) years from the Effective Date, *provided, however,* that the Liquidating Trustee shall be authorized to extend the Liquidating Trust for six (6) months or longer upon Court approval. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement.

O. *Wind Down of Liquidating Trust*

After the termination of the Liquidating Trust and for the purpose of liquidating and winding down the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed. Except as otherwise specifically provided herein, upon the termination of each

Liquidating Trust, the Liquidating Trustee and the Liquidating Trustee Professionals and agents shall have no further duties or obligations hereunder.

P. *Retail Drilling Partnerships*

As of the Effective Date, the Plan deems all wellbore interests owned by the Retail Drilling Partnerships valid and unavoidable. The Retail Drilling Partnerships shall not be entitled to a separate or double recovery for the amounts paid to them under the Mineral Interest Order. The Debtor or the Liquidating Trustee shall provide a release to the Retail Drilling Partnerships, shall record their assignments in the real property records, and shall not pursue any litigation against the Retail Drilling Partnerships to avoid or otherwise impair their wellbore interests or other assets. The Statutory Lien Claimants will maintain any valid lien claims that have or may be asserted against the wellbore interests owned by the Retail Drilling Partnerships (after reducing their claims by the amounts paid to them under the Plan) with the same rights as existed immediately prior to the Effective Date, and the Retail Drilling Partnerships shall maintain any claims and defenses against the Statutory Lien Claimants.

On the Effective Date, management and control of the Retail Drilling Partnerships will be immediately transferred to the Ad Hoc Designee, as summarized in the steps below:

a. The Debtor is deemed to have transferred its membership interest and all rights in MGP to the New MGP Member.

b. The New MGP Member will designate a new manager of the MGP (the "New MGP Manager").

c. The New MGP Member and the New MGP Manager shall have no liability for any actions or inactions taken by the MGP, the current or former manager of the MGP, member of the MGP, the Debtor, or their respective representatives or agents pre or postpetition, through the Effective Date. To give the New MGP Manager time to replace the MGP as the managing general partner of the Retail Drilling Partnerships (if such a replacement is undertaken by the New MGP Manager in its sole discretion), no claims may be asserted against the MGP by any party for a period of 180 days from the Effective Date.

d. The New MGP Manager shall have the right to take all actions set forth in the Retail Drilling Partnerships' governing documents, including but not limited the ability to execute partnership and other agreements and the ability delegate authority. The New MGP Manager shall pay the reasonable costs and expenses of the Ad Hoc Group.

e. All rights under the Retail Drilling Partnerships' partnership agreements are preserved, including the right to remove or replace the MGP.

f. The Liquidating Trustee will cooperate with reasonable requests to effectuate the foregoing, including execution of documents to the extent an estate representative signature is requested.

g. The Liquidating Trustee shall execute assignments for all wellbore interests owned by the Retail Drilling Partnerships and the pipeline interest

acquired by the Retail Drilling Partnerships in the amounts reflected in the Debtor's books and records.

Q. *Substantial Contribution Claim*

The Plan Proponents shall have Allowed Administrative Claims pursuant to section 503(b)(3)(D) in a total amount of $100,000 for professional fees incurred related to the Plan and the Disclosure Statement. Plan Proponents shall share the $100,000 based on their respective claim amount on a Pro Rata basis.

R. *Kasino/Turner*

Amounts held in the Debtor's Texas Bank and Trust account ending 2679 shall remain restricted funds subject to a further Court order. Any amounts ordered by the Court to be turned over to the Debtor's Estate from this account shall be GUC Assets.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtor shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, including in connection with the Sale and this Plan, and (2) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B. *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed and served upon the Liquidating Trustee within twenty-one (21) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 4 General Unsecured Claim. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this Article V.B will be forever barred from assertion against the Debtor, the Estate, the property of the Debtor, or the Liquidating Trust, without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity.**

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1. <u>Timing and Calculation of Amounts to be Distributed</u>

Except as otherwise provided herein, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on a Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account

of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; or (ii) is Disputed. The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries consistent with the requirements of this Plan and the Liquidating Trust Agreement.

2. Entitlement to Distributions

On and after the Effective Date, the Liquidating Trustee shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtor's books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date. Accordingly, the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B. *Liquidating Trustee to Make Distributions*

All Distributions under the Plan shall be made by the Liquidating Trustee in accordance with this Plan. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C. *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Liquidating Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article VI.D.2 of this Plan.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtor or Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtor or the Liquidating Trustee at the time of the Distribution.

Distributions shall be made by the Liquidating Trust in accordance with the terms of this Plan. In making Distributions under this Plan, each Liquidating Trustee may rely upon the accuracy of the claims register in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part. At the option of the Liquidating Trustee, any Cash distribution to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card.

2. Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of

such Holder, at which time such Distribution shall be made to such Holder without interest; *provided, however,* such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trustee (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

3. Failure to Present Checks

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtor and their Estate, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

E. *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, each Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed with respect to the Liquidating Trust by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Liquidating Trustee shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Allowance and Disallowance of Claims*

Except as expressly provided herein or any Final Order entered in the Chapter 11 Case on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any Final Order entered in the Chapter 11 Case on or prior to the Effective Date (including the Confirmation Order), the Liquidating Trust after Consummation will have and retain any and all rights, objections, and defenses the Debtor or its Estate had with respect to any Claim as of the

Petition Date. The validity, priority, and extent of Allowed Statutory Lien Claims shall be determined pursuant to the Lien Determination Procedures.

B. *Prosecution of Objections to Claims*

The Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without a further Bankruptcy Court order.

C. *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall File all objections to Claims by no later than 120 days after the Effective Date. Notwithstanding the foregoing, if the Liquidating Trustee determines that an extension of time is warranted, the Liquidating Trustee may seek the Bankruptcy Court's approval to extend such time by a period of an additional 120 days, without prejudice to the Liquidating Trustee's request to seek additional extensions from the Bankruptcy Court. A motion to extend the deadline to object to claims shall automatically extend the deadline until the Bankruptcy Court enters an order on such motion.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

A. *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1. A Confirmation Order approving the Plan shall have been entered by the Bankruptcy Court in a form acceptable to the Plan Proponents.

2. All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

3. All required consents, approvals, and authorizations, if any, have been obtained.

B. *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article VIII.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1. The Confirmation Order shall be a Final Order (and to the extent an appeal is taken of the Confirmation Order but no stay is in place, the Confirmation Order shall be deemed to be a Final Order).

2. The Lienholder Assets shall include at least $35 million for distribution to Class 3 Statutory Lien Claimants. This condition precedent to the Effective Date may only be waived by the Statutory Lien Claimant Plan Proponents.

3. The Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

4. All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C. *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article VIII may be waived by the Plan Proponents, except the condition in Article VIII.B.2, which may only be waived by the Statutory Lien Claimants Plan Proponents, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D. *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur, nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, the Plan Proponents, the Estate, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, Committee, the Estate, any Holders or any other Entity in any respect.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, their Estate and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided herein and in the Liquidating Trust Agreement, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtor or their Estate and Causes of Action against other Entities.

B. *Exculpation*

**Notwithstanding anything contained in this Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan or the Disclosure Statement, or any Distribution made pursuant to this Plan, except for acts**

**determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with this Plan.**

C. *Injunction*

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders are permanently enjoined from taking any of the following actions against the Debtor or the Liquidating Trust: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to this Plan, which for the avoidance of doubt include the Claims subject to exculpation set forth herein.**

**No Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtor, the Exculpated Parties, the Liquidating Trust, or the Liquidating Trustee that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related thereto, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Entity to bring such Claim or Cause of Action against any Exculpated Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

D. *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

## ARTICLE X.
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR OR ITS ESTATE AND ALL CONTRACT COUNTERPARTIES (INCLUDING TEXOIL) TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST

IN THE CHAPTER 11 CASE, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, its Estate, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to Retained Causes of Action, including with respect to D&O Claims and claims or causes of action against TexOil;

7. adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Trust, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, Liquidating Trust Agreement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, Disclosure Statement, or Liquidating Trust Agreement;

15. enter an order or final decree concluding or closing the Chapter 11 Case;

16. adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17. consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. enforce all orders previously entered by the Bankruptcy Court; and

22. adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A. *Modifications and Amendments*

Subject to the limitations contained herein, the Plan Proponents reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the

purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Liquidating Trustee.

B. *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of the Plan*

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans.

D. *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B. *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation this Plan.

C. *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponents; *provided, further,* that the Plan Proponents may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the

Effective Date without the Plan Proponent's consent, or after the Effective Date without the Liquidating Trustee's consent; and (3) nonseverable and mutually dependent.

D. *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

E. *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable nonbankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponents and professionals will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

F. *Filing of Additional Documents*

On or before the Effective Date, the Committee may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated: September 10, 2026
Houston, Texas

Respectfully submitted,

**PORTER HEDGES LLP**
M. Shane Johnson
Michael Dearman
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
sjohnson@porterhedges.com
michael.dearman@porterhedges.com

**COUNSEL FOR MIDDLETON OIL COMPANY**

**DORÉ ROTHBERG LAW, P.C.**
Lisa Rothberg
Connor Smith
16225 Park Ten Place Dr., Suite 700
Houston, Texas 77084
Telephone: (281) 829-1555
Facsimile: (281) 200-0751
lrothberg@dorelaw.com

**COUNSEL FOR AXIS ENERGY SERVICES, LLC, DOC ENERGY SERVICES, INC., CUDD PRESSURE CONTROL, INC., THRU TUBING SOLUTIONS, INC. GENESIS FLUIDS, LLC, FORCE PRESSURE CONTROL, LLC, AND RELIANCE WELL SERVICE, INC.**

**MEHAFFYWEBER**
Holly Hamm
P.O. Box 16
Beaumont, Texas 77704
Telephone: (409) 835-5011
Facsimile: (409) 835-5177
HollyHamm@mehaffyweber.com

**COUNSEL FOR CACTUS WELLHEAD, LLC AND PRINCESS THREE OPERATING, LLC**

**NORTON ROSE FULBRIGHT US LLP**
Jason L. Boland
Julie Goodrich Harrison
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-3769
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

**COUNSEL FOR PATTERSON-UTI DRILLING COMPANY LLC, MS DIRECTIONAL, LLC, AND ULTERRA DRILLING TECHNOLOGIES, LP**

**PORTER HEDGES LLP**
Eric M. English
James A. Keefe
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
eenglish@porterhedges.com
jkeefe@porterhedges.com

**COUNSEL FOR THE AD HOC GROUP**

# Exhibit B

## SOLICITATION AND VOTING PROCEDURES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No.: 24-33353** |
| **BARROW SHAVER RESOURCES COMPANY, LLC,** | § | **Chapter 11** |
| **Debtor.** | § | |

**SOLICITATION AND VOTING PROCEDURES**

**PLEASE TAKE NOTICE THAT** on **[●], 2026**, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered an order (the "***Disclosure Statement Order***"): (a) authorizing the Plan Proponents,[1] to solicit votes on the *Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC Under Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or modified from time to time, the "***Plan***"); (b) conditionally approving the *Disclosure Statement for Creditors' Liquidating Plan of Barrow Shaver Resources Company, LLC Under Chapter 11 of the Bankruptcy Code* (the "***Disclosure Statement***") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "***Solicitation Packages***"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to confirmation of the Plan and final approval of the Disclosure Statement.

**A. The Voting Record Date.**

The Court has established **September 24, 2026** as the record date for purposes of determining which Holders of Claims in Class 3 (Statutory Lien Claims) and Class 4 (General Unsecured Claims) are entitled to vote on the Plan (the "***Voting Record Date***").

**B. The Voting Deadline.**

The Court has approved **October 26, 2026, at 4:00 p.m. (prevailing Central Time)** as the deadline for submission of Ballots by Holders eligible to vote on the Plan (the "***Voting Deadline***"). The Plan Proponents may extend the Voting Deadline, in their discretion, without further order of the Court. To be counted as votes to accept or reject the Plan, all ballots (each, a "***Ballot***") must be properly executed, completed, and returned in the pre-paid, pre-addressed return envelope

[1] The "***Plan Proponents***" are: Middleton Oil Company, Patterson-UTI Drilling Company LLC, MS Directional, LLC, Ulterra Drilling Technologies, LP, Cactus Wellhead, LLC, Princess Three Operating, LLC, Axis Energy Services, LLC, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc. Genesis Fluids, LLC, Force Pressure Control, LLC, Reliance Well Service, Inc., and the Ad Hoc Group of Partnership Claimants and Brokers.

included in the Solicitation Package or delivered by: (1) first class mail; (2) overnight courier; (3) hand delivery; or (4) online via E-Ballot (as defined below), so that they are **actually received**, regardless of the manner of submission, no later than the Voting Deadline by Kroll Restructuring Administration LLC (the "***Solicitation Agent***"). All Ballots should be sent to: (1) if by regular mail, hand delivery or overnight courier **Barrow Shaver Resources Company, LLC Ballot Processing**, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; or via the online balloting portal ("***E-Ballot***") at the Debtor's restructuring website maintained by the Solicitation Agent (**https://cases.ra.kroll.com/BSR**) by clicking on the "Submit E-Ballot" link under the "Case Navigation" header on the website landing page. Ballots submitted by facsimile, email or other means of electronic transmission (other than E-Ballot) will not be counted.

**C. Form, Content, and Manner of Notices.**

**1. The Solicitation Package.**

The following materials shall constitute the solicitation package (the "***Solicitation Package***"):

a. the Plan;

b. the Disclosure Statement;

c. the Disclosure Statement Order;

d. a notice of the Combined Hearing, in substantially the form annexed as **Exhibit 3** to the Disclosure Statement Order (the "***Combined Hearing Notice***"); and

e. the form of Ballot(s), in substantially the forms annexed as **Exhibit 2A** and **2B**, as applicable, to the Disclosure Statement Order, and applicable voting instructions, together with a pre-addressed, postage prepaid return envelope.

**2. Distribution of the Solicitation Package.**

The Solicitation Package shall include instructions to obtain access, free of charge, to the Plan, Disclosure Statement, and the Disclosure Statement Order (without exhibits except the Solicitation and Voting Procedures) in electronic format through the Debtor's restructuring website at **https://cases.ra.kroll.com/BSR**. Only the Ballot(s), the Cover Letter, and the Combined Hearing Notice will be provided in paper format. Any party that would prefer paper format of, or a flash drive containing, the Plan, Disclosure Statement, and the Disclosure Statement Order may contact Kroll Restructuring Administration LLC (the "**Solicitation Agent**") by: (a) visiting the Debtor's restructuring website at: **https://cases.ra.kroll.com/BSR**; (b) writing to Barrow Shaver Resources Company LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; (c) emailing BSRInfo@ra.kroll.com; and/or (d) calling the Debtor's restructuring hotline at (844) 400-3278

(U.S./Canada, toll-free) or +1 (646) 661-2495 (international, toll) and requesting paper copies of, or a flash drive containing, the corresponding materials (to be provided at the Debtor's expense).

The Plan Proponents shall serve, or cause to be served, (a) all of the materials (excluding Ballots) in the Solicitation Package on the U.S. Trustee; and (b) the Order (without exhibits except the Solicitation and Voting Procedures) and the Combined Hearing Notice on all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 and Rule 2002-1 of the Bankruptcy Local Rules as of the Voting Record Date. In addition, the Plan Proponents shall mail, or cause to be mailed, within four (4) Business Days after entry of the Order (or as soon as reasonably practicable thereafter), but in no event later than **September 28, 2026**, the Solicitation Package to all Holders of Claims in the Voting Classes who are entitled to vote, as described in section D below.

To avoid duplication and reduce expenses, the Plan Proponents will use commercially reasonable efforts to ensure that any Holder of a Claim who has filed multiple or duplicative Claims against the Debtor that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claims and with respect to that Class as against that Debtor.

**3. Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

a. Absent further order of the Court, if a Holder of a Claim in a Voting Class is the subject of a pending objection filed with the Court not less than seven (7) days before the Voting Deadline by the Plan Proponents on a "reduce and allow" basis: (i) the applicable holder shall be entitled to vote such Claim in the reduced amount contained in such objection; and (ii) the applicable Holder may request allowance of such Claim in a different amount for voting purposes by filing a motion under Bankruptcy Rule 3018 not less than seven (7) days prior to the Combined Hearing, with such motion to be set for hearing at the Combined Hearing.

b. If a Claim in the Voting Classes is subject to an objection other than a "reduce and allow" objection that is filed with the Court not less than seven (7) days before the Voting Deadline: (i) the applicable Holder's vote shall not count unless a Resolution Event (as defined herein) occurs as provided herein; and (ii) the applicable Holder may request allowance of such Claim for voting purposes by filing a motion under Bankruptcy Rule 3018 not less than seven (7) days prior to the Combined Hearing, with such motion to be set for hearing at the Combined Hearing.

c. If a Claim in the Voting Classes is subject to an objection other than a "reduce and allow" objection that is filed with the Court fewer than seven (7) days before the Voting Record Date, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise.

d. A "***Resolution Event***" means the occurrence of one or more of the following events no later than the Confirmation Date (as defined in the Plan):

i. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii. an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii. a stipulation or other agreement is executed between the Holder of such Claim and the Plan Proponents resolving the objection and allowing such Claim in an agreed upon amount;

iv. a stipulation or other agreement is executed between the Holder of such Claim and the Plan Proponents temporarily allowing the Holder to vote its Claim in an agreed upon amount; or

v. the pending objection is voluntarily withdrawn by the objecting party.

**4. Non-Voting Status of Unimpaired Classes and Classes Deemed to Reject the Plan.**

Holders of Claims who are not entitled to vote because they are deemed (a) to accept the Plan under section 1126(f) of the Bankruptcy Code or (b) to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the Combined Hearing Notice, which details their nonvoting status. Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

**D. Voting and Tabulation Procedures.**

**1. Holders of Claims Entitled to Vote.**

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

a. holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; *provided* that a claim that is the subject of a pending objection filed with the Court by the Plan Proponents at least seven days prior to the Voting Deadline shall only be counted pursuant to a Resolution Event as provided herein;

b. holders of Claims that are listed in the Schedules in an amount that is liquidated, non-contingent, and undisputed, and a Proof of Claim was not

filed by the Voting Record Date are entitled to vote, *provided* that if the applicable Claims Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall be allowed to vote only in the amount of $1.00;

c. holders whose Claims arise (i) pursuant to an agreement or settlement with the Debtor, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtor pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

d. holders of any disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018;

e. if a Claim has been amended by a later filed Claim, that is filed on or prior to the Voting Record Date, the later filed amending Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim. Except as otherwise ordered by the Court, any amendments to Claims after the Voting Record Date shall not be considered for purposes of these tabulation rules; and

f. with respect to any Entity described in subparagraphs (a) through (e) above, who, on or before the Voting Record Date, has transferred such Entity's Claim to another Entity, the assignee of such Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

**2. Establishing Claim Amounts for Voting Purposes.**[2]

**Filed and Scheduled Claims**. Any amounts filled in on Ballots by the Plan Proponents through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a. the Claim amount (i) settled and/or agreed upon by the Plan Proponents, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, or (iii) set forth in a document executed by the Plan Proponents or Debtors pursuant to authority granted by the Court;

b. the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under Section C.3(d) of these Solicitation and Voting Procedures;

[2] The amounts described herein are for description purposes only and are qualified in all respects by the Plan which shall control.

c. the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Claims Bar Date (or deemed timely filed by the Court under applicable law) and is not the subject of a pending objection, except for any amounts asserted on account of any interest accrued after the Petition Date; *provided* that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Plan Proponents and/or the Solicitation Agent) that is not the subject of an objection will vote only in the amount of $1.00 and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court (other than the Schedules) shall supersede the Claim amount set forth on the respective Proof of Claim;

d. the Claim amount listed in the Schedules; *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided*, *further*, that if the applicable Claims Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall be allowed to vote only in the amount of $1.00;

e. claims filed in the amount of $0.00 will be disallowed for voting purposes; and

f. in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

**3. <u>Voting and Ballot Tabulation Procedures</u>.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Plan Proponents' right to waive any of the below specified requirements for completion and submission of Ballots:

a. except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Plan Proponents or by order of the Court), the Plan Proponents shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan;

b. the Solicitation Agent will date-stamp all Ballots when received. The Solicitation Agent shall retain the Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

c. the Plan Proponents will file with the Bankruptcy Court, not later than **October 28, 2026** a certification of votes (the "***Voting Report***"). The Voting Report shall, among other things, certify to the Court in writing the amount and number of allowed claims or allowed interests of the Voting Classes accepting or rejecting the plan, and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via facsimile, or damaged (each, an "***Irregular Ballot***"). The Voting Report shall indicate the Plan Proponents' intentions with regard to each such Irregular Ballot. The Voting Report shall be served upon the Debtor, the Committee and the U.S. Trustee;

d. the method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot;

e. an executed Ballot (hard copy or E-Ballot) is required to be submitted by the Entity submitting such Ballot. Ballots submitted by facsimile, email or other means of electronic transmission (other than E-Ballot) will not be counted;

f. no Ballot should be sent to the Plan Proponents, the Plan Proponents' agents (other than the Solicitation Agent), the Plan Proponents' financial or legal advisors, the Debtor, the Debtor's agents, or the Debtor's financial or legal advisors, and if so sent will not be counted;

g. if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

h. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class, the Plan Proponents may, at their discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

i. a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing, and if so requested by the Plan Proponents or the Solicitation Agent, must submit proper evidence satisfactory to the Plan Proponents of its authority to so act;

j. the Plan Proponents, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

k. neither the Plan Proponents, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

l. unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

m. in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim or Interest will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

n. if a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

o. if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

p. the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in the Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date, *provided* that if the applicable Claims Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall be allowed to vote only in the amount of $1.00; (iv) any unsigned Ballot or Ballot lacking a signature; (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

q. after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Plan Proponents;

r. the Plan Proponents are authorized to enter into stipulations, with the Holder of any Claim agreeing to the amount of a Claim for voting purposes; and

s. where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (x) a Ballot, (y) a group of Ballots within a Voting Class received from a single creditor, or (z) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted.

**E. Amendments to the Plan, the Disclosure Statement, and the Solicitation and Voting Procedures.**

The Plan Proponents reserve the right to make non-substantive or immaterial changes to the Plan, the Disclosure Statement, the Ballot, the Combined Hearing Notice, the Cover Letter, the Solicitation and Voting Procedures, the Voting and Tabulation Procedures, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Plan, the Disclosure Statement, and any other materials in the Solicitation Package before their distribution.

* * * * *

# **Exhibit C**

## LIEN PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Barrow Shaver Resources Company LLC,[1] | § | Case No. 24-33353 |
| | § | |
| | § | |
| Debtor. | § | |

**LIEN DETERMINATION PROCEDURES**

a. **Appointment of a Mediator**. The Parties[2] shall select a mediator on or before ________ and provide notice _____. The Mediator shall be paid from the ___________.

b. **Timeline.**

| **Description** | **Deadline** |
|---|---|
| Lien Claimant Proof of Claim Bar Date | December 10, 2024 at 5:00 p.m. CT[3] |
| **HRF Notice.**[4] The Liquidating Trustee shall file a Notice listing all of the Statutory Lien Claims with timely filed Lien Claim Proofs of Claim and recorded liens in the property records against the Hidden Rock Field ("HRF") assets (a/k/a Lot 1 Assets). The HRF Notice shall include the Lien Claimant, amount of lien, date lien was filed, recording information, and | 30 days after Effective Date of the Plan |

[1] The last four digits of the Debtor's federal tax identification number are 0510. The Debtor's corporate headquarters is located at 977 Pruitt Place, Tyler, TX 75703.

[2] "Parties" shall include the Liquidating Trustee, the Plan Proponents, and the Statutory Lien Claimants. The Statutory Lien Claimants, as a group, shall designate one claimant to act on behalf of the collective group of Statutory Lien Claimants in proposing and agreeing to the selection of the mediator. "Statutory Lien Claimants" means any party which timely filed a Lien Claimant Proof of Claim.

[3] Pursuant to the Bar Date Order, unless granted an extension to file, all Statutory Lien Claimants must have filed a Lien Claimant Proof of Claim with certain required information to support such Statutory Lien Claim. Nothing in the Lien Determination Procedures alters the requirements of the Bar Date Order.

[4] For the avoidance of doubt, the HRF Notice shall not determine the extent or validity of the Statutory Lien Claims against any collateral. The extent and validity of the Statutory Lien Claims shall be determined as part of the PV Notice and associated Adversary Proceedings described herein.

<table>
<tr><td>well/leasehold name.</td><td></td></tr>
<tr><td>Deadline to Submit to Mediator Notice of Objection to HRF Notice. Parties who object to the HRF Notice must give notice of its objection(s) to the Mediator and all Parties (“<u>HRF Dispute Notice</u>”). Such notice must, set forth the bases for its objection(s); provided, however, that the HRF Notice objections are limited to objections that a Statutory Mineral Lien was recorded or otherwise timely filed but not listed on the HRF Notice.</td><td>HRF Notice Date + 10 days</td></tr>
<tr><td>Deadline to Submit to Mediator Replies and Position Papers. Replies in support of HRF Notice and position papers of the Parties are due to the Mediator.</td><td>HRF Notice Date + 15 days</td></tr>
<tr><td>HRF Notice Negotiations and/or Mediation between Liquidating Trustee and applicable Lien Claimant(s)</td><td>16th through 23rd days following the HRF Notice Date<br><br>(May be done virtually)</td></tr>
<tr><td>HRF Notice Mediation Deadline</td><td>HRF Notice Date + 23 days.</td></tr>
<tr><td colspan="2">If any HRF Notice Objection is not resolved by mediation, within 1 business day of the HRF Notice Mediation Deadline, the Liquidating Trustee shall request an emergency evidentiary hearing (the “<u>HRF Notice Hearing</u>”) on the HRF Notice, with such hearing to occur on or about the HRF Notice Mediation Deadline + 14 days, subject to Court availability. Within 1 business day of the HRF Notice Mediation Deadline, each party who wishes to pursue their HRV Notice Objection must file such Notice with the Court.<br><br>No discovery shall be permitted for the HRF Notice Hearing.<br><br>For each lien claim where the lien claimant does not timely (a) provide a notice of HRF Dispute Notice challenging the HRF Notice by the HRF Dispute Notice Deadline, such lien claimant shall be barred from later challenging the HRF Notice at the HRF Notice Hearing or otherwise.</td></tr>
<tr><td>PV Notice. The Liquidating Trustee shall (i) file a Notice of Priority, Validity, and Extent that identifies whether the Liquidating Trust affirms or challenges the validity, priority, or extent of a Lien Claim and on what</td><td>45 days after Effective Date of the Plan</td></tr>
</table>

| | |
|---|---|
| basis, if challenged; and (ii) publicly post on the Kroll website for the Chapter 11 Cases a spreadsheet containing the data supporting the Liquidating Trustee's position, which shall include identification of which lien claimants have asserted liens in the Hidden Rock Field, to the extent each claimant provided this information in a proof of claim. | |
| **Document Production Deadline**. The Liquidating Trustee shall provide to all Parties (i) all mineral leases, (ii) all assignments or bills of sale pertaining to any mineral lease or wellbores located thereon; and (iii) any participation agreements, joint operating agreements, or other agreements supporting the Liquidating Trustee's position. | PV Notice Date + 10 days |
| **Notice of Dispute Deadlines.** Deadline for any Statutory Lien Claimants to give the Mediator and all Parties notice and bases of their dispute regarding the PV Notice with respect to validity, priority, or extent of any lien claim ("Lien Dispute"). If a Party gives notice of a Lien Dispute to a Party who has not given notice of a Lien Dispute, notice of a counter lien dispute ("Counter Dispute") shall be permitted within 3 business days. The noticing party shall contemporaneously produce copies of lien claims (including mineral liens, mortgage liens, assignments or bills of sale, or other documents) supporting their dispute. | PV Notice Date + 24 days |
| **Payment of Unchallenged Liens.**[5] Any unchallenged lien claim shall be paid up to the value of the collateral | PV Notice Date + 31 days |

[5] Further distributions may be made pursuant to any mediated agreements or stipulations and a final distribution shall be made to true up any payments to which a Statutory Lien Claimant is entitled after full adjudication or other resolution of the Adversary Proceeding.

| | |
|---|---|
| securing such claim (the "Unchallenged Payment"). To the extent any unchallenged lien has equal priority with another lien claim (challenged or unchallenged), the Unchallenged Payment shall be limited to each unchallenged lien claim's pari passu portion of the collateral securing such claim as if all challenged senior lien claims have been proven. | |
| **Mediation Deadline.** All Parties shall participate in mediation. The Mediator shall determine the manner in which mediation shall proceed and set internal deadlines for such mediation; *provided, however,* that mediation must conclude no later than the Mediation Deadline. | PV Notice Date + 56 days |
| **Adversary Deadline**. Deadline for the Liquidating Trustee to file an Adversary Proceeding against any Statutory Lien Claimant in connection with any Lien Dispute or Counter Dispute unresolved by mediation. In the Adversary Proceeding the Liquidating Trustee will seek a declaratory judgment to adjudicate the validity, priority, extent, or amount of outstanding Lien Disputes or Counter Disputes (the "Adversary Deadline"). | PV Notice Date + 70 days |
| **Answer Deadline**. Any defendant in an Adversary Proceeding shall file their answers and any counterclaims (or other responses) asserting the factual and legal bases for their positions, including any then known support to the priority, extent, validity or perfection of their mortgage lien, or mineral lien claim and the value of any such liens. | Pursuant to the applicable Rules of Procedure |

c. **Adversary Proceedings.** The Liquidating Trustee's complaint commencing the Adversary Proceeding shall allege, to the extent such information is available,

sufficient factual and legal bases for priority, validity, extent, perfection, and value provided in the PV Notice. Defendants' answers shall allege sufficient information to identify the well(s), units(s), lease(s), and other property with respect to each lien claim subject to the complaint. For the avoidance of doubt, the Liquidating Trustee is permitted to modify the PV Notice upon filing the Adversary Proceeding in order to reflect and incorporate any mediated settlements and other agreements reached prior to initiation of the Adversary Proceeding. The parties to the Adversary Proceeding shall enter in a mutually agreeable protective order.

d. **For each lien claim where the lien claimant does not timely provide a notice of Lien Dispute or Counter Dispute challenging the Notice of Priority and Validity by the Notice of Dispute Deadline, the priority and validity provided in the Notice of Priority and Validity shall apply and the lien claimant shall be barred from later challenging either priority or validity in the Adversary Proceeding or otherwise.**

e. **Rule 26(f) Scheduling Conference.** If mediation is unsuccessful in resolving any Lien Dispute or Counter Dispute, the Liquidating Trustee will file an Adversary Proceeding along with a Statement of Unresolved Proceedings regarding any unresolved lien challenges. The Court shall set a Rule 26(f) Scheduling Conference, at which time, the remaining

objecting parties shall schedule any remaining discovery and/or pleading deadlines as well as a final evidentiary hearing on the Adversary Proceeding.

f. **Binding Lien Determination Procedures**. The Lien Determination Procedures shall be binding on all parties. For the avoidance of doubt, the Lien Determination Procedures shall not affect any determination as to ownership of assets.

2. The Debtor and its claims and noticing agent, Kroll, as well as the Clerk of the Court, are authorized to take all such actions as are necessary and appropriate to implement and effectuate the terms of this Order.

3. Nothing in this Order shall be deemed: (a) a waiver of any claim or cause of action that exists against any entity; (b) a ratification or assumption of any agreement; or (c) a waiver of rights under the Bankruptcy Code, any other applicable law or any agreement.

4. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation and/or enforcement of these procedures. Any changes to these Lien Determination Procedures may be made by further order of the Court, upon motions to extend these deadlines, seek additional discovery, or agreed stipulations between parties and the Debtors. Additionally, parties to the Lien Procedures Motion whether an original party, lien holder, creditor, party in interest, or third party with any interest in any property of the Debtors' estates who or which appear herein for any reason or participate in the Lien Procedures or the chapter 11 cases in chief are considered to consent to the jurisdiction of the Bankruptcy Court as articulated in *Wellness International Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015).

**Exhibit D**

**LIQUIDATION ANALYSIS**

**[OMITTED]**